**RUSTIC HILLS SHOPPING PLAZA, INC., a limited partnership, and Rustic Hills Associates, a general partnership, Petitioners,**

v.

**COLUMBIA SAVINGS AND LOAN ASSOCIATION, A Colorado corporation, and Esther E. Rinard, as Public Trustee of the County of El Paso, State of Colorado, and Smartt Construction Co., a Colorado corporation, B.H. Smartt, and M.A. Smartt, Respondents.**

No. 82SC18.

Supreme Court of Colorado, En Banc.

March 28, 1983.

Rehearing Denied April 18, 1983.

Waldbaum, Corn, Lipschuetz & Koff, P.C., Jesse N. Lipschuetz, David Lichtenstein, Denver, for petitioners.

Wegher & Fulton, P.C., Richard W. Breithaupt, Laurie A. Loveday, Martha J. Ridgway, Denver, for respondents.

ROVIRA, Justice.

Petitioners appeal a district court denial of a preliminary injunction to bar the foreclosure sale of certain property. We affirm.

## I.

On April 5, 1968, Smartt Construction Company, B.H. Smartt, and M.A. Smartt (Smartt) executed a deed of trust in favor of Columbia Savings and Loan Association (Columbia) encumbering the Rustic Hills Shopping Center in Colorado Springs. The deed of trust secured payment of a promissory note for $1,800,000 payable in monthly installments and contained a "due-on-sale" clause, which provided that "[i]n the event of the sale or transfer of the real property herein described, at the election of the Association or holder, the entire balance of the note may become due and payable...."

In June 1970, Smartt sold the property to petitioner Rustic Hills Shopping Plaza, Ltd. (Shopping Plaza), a limited partnership, which assumed and agreed to pay the note. On June 4, 1980, Shopping Plaza and petitioner Rustic Hills Associates (Associates) entered into an installment land contract for the shopping center. Prior to the execution of the contract, Columbia and Shopping Plaza engaged in negotiations with respect to an assumption of Shopping Plaza's loan by Associates. Columbia at that time indicated that it was enforcing its rights under the due-on-sale clause in other transactions. The evidence is contradictory as to whether Columbia had knowledge prior to May 1981 that the proposed transfer had been effected, but the trial court apparently found that it did not.

On May 22, 1981, Judith Hayden, a commercial loan counselor at Columbia, obtained from the loan servicing department a copy of an ownership and encumbrance report on the shopping center, which showed that it had been transferred on June 4, 1980. It is apparently unknown who ordered the report or how long it had been in the possession of Columbia. However, in the normal course of business the reports are delivered to Columbia's in-house counsel for review soon after receipt by the loan servicing department, indicating that the report in question had not been in Columbia's possession for long.

Columbia sent a letter to Shopping Plaza on June 24, 1981, stating that it would accelerate the loan unless it received an acceptable application for approval of the transfer, subject to any terms and conditions which Columbia might require. On July 31, 1981, Columbia sent another letter outlining the terms under which Columbia would waive its right to accelerate. These terms included an increase in the interest rate from 7% to 15%. The letter also stated that if the contract sellers and contract purchasers had not notified Columbia in writing by August 10, 1981, of their acceptance of the new terms, Columbia would exercise its right to accelerate the loan effective August 10, 1981.

Columbia continued to bill through the September statement, which bore a billing date of August 18, 1981, and a due date of September 1, 1981. Petitioners made this payment, which was accepted by Columbia.

In September 1981, Columbia commenced foreclosure proceedings against the shopping center by filing a notice of election and demand with the public trustee of El Paso County, alleging breach under the due-on-sale clause.

The October, November, and December 1981 payments were made, but were refused by Columbia and returned.

This action began when petitioners filed a complaint requesting an injunction against the foreclosure sale of the property, claiming that the due-on-sale clause either had not been violated or was unenforceable. The foreclosure action and the action for preliminary injunction were consolidated, and the hearings on the preliminary injunction and the C.R.C.P. 120 motion were held on November 21, 1981. After the hearing, the district court granted the C.R.C.P. 120 motion and denied the petitioners' motion for preliminary injunction. The petitioners appealed the denial of their motion for preliminary injunction to the court of appeals and also filed a motion for injunction pending appeal. The court of appeals denied the motion for injunction but granted a stay to enable petitioners to file a petition for certiorari with this court. We granted certiorari under C.A.R. 50 to review the denial of the injunction and stayed the foreclosure sale until further order of court.

## II.

■ As a threshold matter, we must address Columbia's contention that this action is moot because section 38–39–115(1), C.R.S. 1973, prohibits a foreclosure sale from being held more than six months from the date originally designated for the sale. In this case, the sale was originally scheduled to be on November 17, 1981. Columbia argues that the case therefore became moot on May 18, 1982. However, section 38–39–115(1) deals with continuances of the sale date by "the public trustee, sheriff, or other official conducting the sale," and is therefore not applicable to this case. Consequently, the case is not moot.

■ In concluding that petitioners were not entitled to a preliminary injunction, the trial court ruled that the petitioners had not shown any of the three requirements for an injunction: the lack of an adequate remedy at law, irreparable harm from a refusal to grant the injunction, and a reasonable probability of success on the merits. Because of our resolution of the third issue, we need not address the first two.

■ Petitioners first argue that the installment land contract did not trigger the due-on-sale clause because it did not constitute a "sale or transfer of the real property." We disagree.

Installment sales and outright sales differ in form and in the time they take to complete, but their substance is the same for purposes of a due-on-sale clause in a deed of trust. In the case of an installment land contract, both possession and equitable title are in the purchaser, with the seller retaining bare legal title, thus posing the same threats to the lender's economic interests as are posed by an outright sale. *See Carpenter v. Winn,* 39 Colo.App. 238, 566 P.2d 370 (1977); *Mutual Federal Savings & Loan Association v. Wisconsin Wire Works,* 58 Wis.2d 99, 205 N.W.2d 762 (1973) ("In view of common and technical usage of the term 'convey' and the purpose of the 'due-on-sale clause' of the mortgage and note, there is no ambiguity. The land contract was a conveyance that gave the purchaser an equitable title to the property as well as the immediate right to possession"). *Williams v. First Federal Savings & Loan Association,* 651 F.2d 910 (4th Cir.1981). *See also* Dunn & Nowinski, *Enforcement of Due-on-Transfer Clauses: An Update,* 16 Real Prop., Prob. & Tr.J. 291 (1981) (pointing out that with the exception of a Florida District Court of Appeals decision, courts have uniformly held that sale by installment land contract is a sale or transfer for purposes of the due-on-sale clause). Moreover, the purchaser under an installment contract assumes the risk of loss and receives any appreciation in value.

Petitioners next argue that the trial court erred in holding that the due-on-sale clause was not an unreasonable restraint on alienation. We resolved that question in *Income Realty & Mortgage, Inc. v. Columbia Savings & Loan Association,* 661 P.2d 257 (1983), where we held that a due-on-sale clause is a *per se* reasonable restraint on alienation.

■ In *Income Realty, supra,* however, we did state that a borrower might be relieved from the effect of the clause where

its exercise is the result of some unconscionable conduct on the part of the lender. Petitioners maintain that such is the case here, relying on Columbia's attempted increase in the interest rate from 7 percent to 15 percent. The original note was executed in 1968. Testimony was presented at the hearing that the interest rate in July 1981 on a new loan would have been approximately 18 to 19 percent, if money had in fact been available. Under the facts and circumstances then existing, we perceive no unconscionability in this increase in interest rates.

■ The petitioners also argue that Columbia waived its right to accelerate the note by virtue of its continued acceptance of monthly installments through the September 1981 payment. They rely on *Barday v. Steinbaugh,* 130 Colo. 10, 272 P.2d 657 (1954), which held that a payee of a promissory note who elected to accelerate the balance due because the maker was in default waived his right to accelerate a note for nonpayment by accepting subsequent payments. However, in *Motlong v. World Savings & Loan Association,* 168 Colo. 540, 452 P.2d 384 (1969), we held that the right to accelerate was not waived where the grounds for default were other than nonpayment, in that case failure to keep the premises in repair and nonpayment of taxes. The same reasoning applies here. The default in question was not the failure to make the required payments, but was petitioners' failure to comply with the provisions of the due-on-sale clause. Continued monthly payments did not alter the fact that the property had been transferred, thus triggering the due-on-sale clause. Consequently, Columbia did not waive its right to accelerate.

The judgment of the district court is affirmed, and the cause is remanded for proceedings consistent with the views expressed in this opinion.