No. 18,252.

LEWIS DER. MOWRY *v.* KELLY JACKSON, ET AL., AS
STATE BOARD OF LAND COMMISSIONERS.
(343 P. [2d] 833)

Decided September 8, 1959.

197

Messrs. COLLINS, HENRY & DOLAN, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. SAMUEL R. FREEMAN, Assistant, for defendants in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

PLAINTIFF in error was plaintiff in the trial court, and will be referred to as plaintiff. Defendants will be referred to as the Board.

Plaintiff, who alleges he is a qualified veteran resident of Colorado, sought review of the action of the Board in the district court, claiming that the Board violated his rights under the "Veterans' Act," C.R.S. '53, 112-5, abused its discretion and exceeded its jurisdiction in refusing to sever and make available for sale as a separate parcel a thirty acre tract contained in a 120 acre tract of public land being sold by the Board. He alleges his request to sever was both proper and seasonable. Had the thirty acre tract been sold separately, plaintiff states he intended to bid upon it in the manner prescribed by statute. From an adverse ruling in the district court he brings error.

The undisputed facts indicate that for many years plaintiff had leased the whole 120 acre tract from the Board. This land had originally been acquired by the state as "permanent school land." In September of 1956 plaintiff filed an application with the Board requesting that the whole tract be sold at public sale. Statutory procedures for such a sale were complied with, notice was published and the proper fees paid by plaintiff. On the day of sale, plaintiff filed an application with the Board to have the designated thirty acre tract severed and offered for separate sale in the manner prescribed by statute. The Board refused to honor the application, and proceeded with the sale of the whole 120 acre unit.

Plaintiff's grounds for reversal can be summarized as:

1. The trial court failed to make any findings of fact, thus its judgment was erroneous, and should be vacated.

2. The Board failed to follow the Veteran's Act, after timely application to apply it, thus exceeded its jurisdiction and abused its discretion.

It is a basic concept of American jurisprudence that before a suit is to be brought to trial the issues of law and of fact must first be formulated. Historically

this has been a function of the pleadings. In recent years discovery procedures have supplemented the traditional pleading techniques, and, to a large extent, have simplified and replaced them.

Nevertheless it is axiomatic that issues of law and of fact must be presented to the trial court for its initial determination. It is then the function of an appellate court to review for error the trial court's rulings on these issues, either on its interpretation of the law, if the issue is one of law, or on its findings of fact, to determine whether such findings are either supported by substantial evidence or are against the manifest weight of the evidence. Without a proper presentation of these matters in the appellate court it can no more serve its function than the trial court can in the absence of proper pleadings which bring the case into proper focus.

The findings of the trial court, with which we are concerned here, are three brief paragraphs in the record which read:

"Let the record show that in Case B-14623, Lewis deR. Mowry, plaintiff, v. Kelly Jackson, Et Al., the Court has been fully advised and the record discloses the facts as elicited from this witness stand, so there will be no definite findings of fact because they are in the record.

"Let the record show that it is based on these facts, the decision and judgment of this Court, that the citation to show cause order is quashed and the complaint is dismissed, each side to pay their own costs.

"In the event a motion for new trial were filed, the same would be dispensed with, and counsel has the statutory time in which to secure a Reporter's Transcript."

R.C.P. Colo., Rule 52 (a), states:

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts and state its conclusions of law thereon and direct the entry of the appropriate judgment; * * *. Requests for findings are not necessary for purposes of review. * * * If an

opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under rules 12 or 56 or any other motion except as provided in rule 41 (b)."

Rule 52 (a) uses the mandatory words "the court shall find the facts." In *Mass. Bonding & Ins. Co. v. Central Finance Corp.* (1951), 124 Colo. 379, 237 P. (2d) 1079, this phrase was held to have been complied with, where there were no disputed facts, when the trial court made oral findings of fact. There the action of the trial court was approved when it "made oral findings to the effect that the issues joined were in favor of plaintiff." That decision was followed by *Dunbar v. County Court* (1955), 131 Colo. 483, 485, 283 P. (2d) 182, where the trial court had made oral findings of fact and conclusions of law and it was insisted that it must enter written findings of fact and conclusions of law when so requested. It was again stated that written findings are not required, this court adding: "It is desirable practice — if written findings are thought to be necessary in any case — that the party feeling the need thereof shall make written request for such findings and file same with the trial court."

In *Dunbar* it does not appear whether there were disputed facts before the court, but that distinction is not the determining factor. It is the Rule itself which leaves the matter in the sound discretion of the trial court as to whether the findings shall be written or oral. But that discretion does not mean that no findings of fact need be made. The court has a duty to make one or the other, and if made orally to see that his statement thereon is transcribed in full. In either event such findings must be so explicit as to give the appellate court a clear understanding of the basis of the trial court's decision and to enable it to determine the ground on which

it reached its decision. In *Maher v. Hendrickson* (7 Cir. 1951), 188 F. (2d) 700, the court said:

"The ultimate test as to the propriety of findings is whether they are sufficiently comprehensive to provide a basis for decision and supported by the evidence."

■ We take this opportunity to point out that usually the type of findings approved by this court in the *Mass. Bonding* case would not be considered adequate compliance with the rule. And, we further point out, so that the dicta contained in the *Dunbar* case will not be misunderstood that the rule provides that "Requests for findings are not necessary for purposes of review." This part of the rule thus relieves the parties of the need to make a request for findings, but does not relieve the judge of his duty to make them. See dictum in *Hill v. Ohio Casualty Ins. Co.* (6 Cir. 1939), 104 F. (2d) 695. If the court makes oral findings and written ones are desired by either party, then they should follow the procedure suggested in *Dunbar*.

■ Here the wording used by the trial court in its ruling on the action below obviously does not comply with the Rule for it is no finding of fact at all to merely state that "they (the facts) are in the record." Entering a judgment, as was done here, also is not a sufficient setting forth of conclusions of law to properly inform this court of the trial court's reasons.

Under the comparable federal rule it has been held that where the necessary findings of fact are lacking, when a party seeks relief in an appellate court, the correct procedure is not to dismiss the writ but rather to vacate the judgment and remand the case to the trial court for appropriate findings of fact. If this cannot be done, then the judgment is reversed and remanded for a new trial. *Irish v. U.S.* (9 Cir. 1955), 225 F. (2d) 3.

■ Though we approve of the procedure set forth in *Irish* we believe that it should be applied only prospectively. It should not in fairness to the litigants before us be applied to them and further delay their cause

here when this record discloses that there is no dispute in the evidence and that the trial court relied upon that facet of the *Mass. Bonding case* in its action below. Accordingly, we proceed to a determination of the issue of whether one can apply for the sale of state owned lands, have the state proceed in accordance with the application, and then on the day of sale effectively petition for statutory veteran's rights under C.R.S. '53, 112-5-1, et seq.

C.R.S. '53, 112-5-1, provides which war veterans (and it does not include all of them by any means) "who shall comply with the provisions of this article" are entitled to come under the Act. Section 3 requires that the "applications under this article shall contain and be accompanied by proof * * * of the applicant's qualifications * * *." If the foregoing is complied with, then Section 4 provides:

"The land included in said application shall be appraised at its true value and no more. If said land shall be appraised at more than seven thousand five hundred dollars, enough land, by legal subdivisions or such fractions thereof as the state board of land commissioners shall approve, shall be excluded by the applicant to bring the value of the remainder below seven thousand five hundred dollars."

█ Obviously, under the record before us, plaintiff did not comply with the veteran's statute *in his original application*. He cannot now be heard to complain on the date set for sale, in accordance with his own request, that the rules of the sale should be changed. He has by his conduct estopped himself from claiming purchase rights to this particular land as a veteran .

█ No reasonable interpretation of Section 4 should require the Board to divide land on the sale date unless it had prior notice of the request in accordance with Sections 1 and 3. In the instant case it would not only be improper but unfair, for it might leave the state with the crumbs, so to speak, and allow plaintiff to take the

frosting, because plaintiff sought to carve out that part of the land with water and improvements thereon, and leave the remaining land literally high and dry. This certainly could be a detriment to the state in some situations and possibly it was here.

When the state has been misled by plaintiff's original application, as here, and altered its position by preparing for a legal sale of part of its lands, an estoppel *in pais* results against the applicant who seeks to change his position at a later date. See *Beaman v. Stewart* (1903), 19 Colo. App. 222, 74 Pac. 342; *Long v. Robinson* (1926), 222 Mo. App. 503, 281 S.W. 78; *Mancini v. Thomas* (1943), 113 Vt. 322, 34 A. (2d) 105; *Mabray v. Williams* (1955), 132 Colo. 523, 291 P. (2d) 677.

It is not essential to the application of estoppel that plaintiff did not intend to mislead the state. See *Rogers v. Portland & B. St. Ry.* (1905), 100 Me. 86, 60 Atl. 713, 70 L.R.A. 574; *N. J. Suburban Water Co. v. Town of Harrison* (1939), 122 N.J.L. 189, 3 A. (2d) 623; *Ellis v. Metropolitan Casualty Ins. Co. of N.Y.* (1938), 187 S.C. 162, 197 S.E. 510.

The state had the right to and did rely upon plaintiff's application and changed its position in reliance thereon. That is sufficient to negate this plaintiff's claim to belatedly asserted rights.

We point out that this is not a case of plaintiff being deceived or mislead as to his rights as a veteran because he testified that he knew of his rights, but just didn't apply under them until the date of sale.

The judgment is affirmed.

MR. CHIEF JUSTICE KNAUSS and MR. JUSTICE DAY not participating.