**K.C.R. RESOURCES, INC., a Colorado corporation, Plaintiff-Appellant,**

v.

**STATE BOARD OF LAND COMMISSIONERS OF COLORADO, and its members, Rowena Rogers, William H. Claire and Tommy Neal, Defendants-Appellees.**

No. 82SA537.

Supreme Court of Colorado,
En Banc.

Nov. 26, 1984.

Allen A. Thoreen, Denver, for plaintiff-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Kathleen M. Bowers, Asst. Atty. Gen., Melinda Kassen, Asst. Atty. Gen., Denver, for defendants-appellees.

Davis, Graham & Stubbs, Robert H. Harry, Joseph P. McMahon, Jr., Denver, Daniel R. Hale, Grand Junction, for amicus curiae Occidental Oil Shale, Inc.

LOHR, Justice.

This is an appeal by K.C.R. Resources, Inc. from a judgment of the District Court for the City and County of Denver affirming the denial by the State Board of Land Commissioners (board) of K.C.R.'s application for a permit to explore certain state lands for coal.[1] We affirm.

**I.**

On November 13, 1979, K.C.R. filed an application with the board for a permit under section 36-1-140, 15 C.R.S. (1973),[2]

---

1. K.C.R. appealed the judgment of the district court to the Colorado Court of Appeals, and we accepted jurisdiction pursuant to section 13-4-110(1)(a), 6 C.R.S. (1973), because of a possible issue concerning the constitutionality of section 36-1-140, 15 C.R.S. (1973). Jurisdiction in such cases is withheld from the court of appeals by section 13-4-102(1)(b), 6 C.R.S. (1973). As noted below, we resolve this appeal on different

grounds and decline to address the constitutional issue.

2. The version of section 36-1-140, 15 C.R.S. (1973), in effect at the time of K.C.R.'s application provided that:

Location of mineral claims may be made upon unleased mineral lands belonging to the state. The discoverer of a body of mineral in

to explore certain state land for coal. K.C.R. was notified that its application would be considered at the board's regular meeting to be held on December 3, 1979, and was offered the opportunity to attend and submit materials demonstrating its right to a permit.

At the meeting of the board, K.C.R. presented testimony and other evidence in support of its contention that an exploration permit should be issued. The evidence showed, and the board found, that the exploration permit sought was based upon an alleged discovery of coal by K.C.R. on land owned by the state.[3] This alleged discovery was made by K.C.R. early in November 1979 by drilling an exploration hole on privately-owned land adjacent to one of the five parcels of state land for which an exploration permit was sought.[4] This off-site exploration hole, in combination with inferences drawn from United States Geological Survey maps, constituted the steps upon which K.C.R. asserted discovery of coal on the state land in question.

On November 9, 1979, K.C.R. recorded a notice of discovery with the County Clerk and Recorder for La Plata County and posted copies of the notice in Durango, Colorado, at the courthouse and the post office.[5]

The board denied K.C.R.'s application for an exploration permit on several grounds. It concluded that K.C.R. had made no discovery because (1) coal is not a discoverable mineral, (2) the exploration hole was not on state land and the geologic inference that the coal extended under the state land was based on maps at least 25 years old, (3) the existence of the coal was geologically known at least 25 years before K.C.R.'s claimed discovery, and (4) as to three of the five parcels, the drill hole was too remote to allow for proper geologic inference that the coal extended under those three parcels. The board also ruled that K.C.R. had failed to comply with the posting requirements of section 36-1-140, because in order to post a notice conspicuously, as the statute requires, the notice must be placed on the land on which the discovery is claimed. Furthermore, the board concluded that the lands in question were not "unleased mineral land belonging to the state" within the meaning of section 36-1-140 because of a surface lease, rights of way, and a mining lease affecting two of the parcels; and because the surface rights in the other three parcels were not owned by the state. Additionally, the board noted that other applicants had requested leases on two of the parcels and that to the extent the preferential leasing provisions of section 36-1-140 do not result in maximum revenue to

either a lead, lode, ledge, deposit, vein, or contact shall immediately post conspicuously a notice declaring that he has made such a discovery on the date attached to the notice. Within ten days after posting said notice, the discoverer must notify the state board of land commissioners of said discovery and arrange for a permit to explore the extent of the discovery. Within sixty days from date of discovery, the locator shall be required to take a lease upon such terms as may be agreed upon by the state board of land commissioners, or apply for an extension of the permit.

In its present form, this statute expressly excludes coal and oil shale from its terms. § 36-1-140, 15 C.R.S. (1984 Supp.).

3. K.C.R. claimed a discovery of coal on five parcels of land owned by the state in La Plata County. Two of the parcels were contiguous. The other three were separate from the two contiguous parcels and from each other. The state owned both surface and mineral rights in

the two contiguous parcels, and mineral rights only in the other three parcels. The board found portions of these lands to be subject to various surface leases and rights of way. Part of one parcel was also subject to a mineral lease for gold and silver.

4. The board found that:
The exploration hole was drilled by XL Drilling Company, Inc. The log maintained by this company reveals that three cores were made during drilling at depths between 250 and 260 feet, between 303 and 310 feet, and between 315 and 325 feet. Testimony established that samples were taken from each core at every five foot level. The last two corings contained coal. No chemical analysis was made of the coal samples, however.

5. The statute requires that a discoverer "shall immediately post conspicuously a notice" declaring the fact and the date of the discovery. § 36-1-140, 15 C.R.S. (1973).

the state, they violate section 10 of art. IX of the Colorado Constitution.[6]

K.C.R. appealed the denial of the exploration permit. The district court affirmed the board's action, finding that the board properly denied the permit because K.C.R. had not met the requirements of section 36–1–140. Also, the court concluded that the board had the discretion under section 36–1–121, 15 C.R.S. (1973),[7] to grant or withhold permission to K.C.R. to enter state land for the purpose of attempting the discovery of minerals. The court concluded that the board's denial of the exploration permit was consistent with this discretion.[8]

K.C.R. contends that it made a discovery within the terms of section 36–1–140 so as to require the board to issue an exploration permit to allow K.C.R. to ascertain the extent of that discovery. We disagree. Therefore, it is unnecessary to determine whether the other bases upon which the board relied in denying the exploration permit are correct.

## II.

Preliminarily, we note K.C.R.'s contention that the district court made inadequate findings of fact and conclusions of law to satisfy C.R.C.P. 52.[9] K.C.R. relies on *Mowry v. Jackson*, 140 Colo. 197, 343 P.2d 833 (1959), in support of that position. C.R.C.P. 52, by its own terms, applies only to actions tried upon facts without a jury. Although *Mowry* did involve a challenge to an action of the Colorado State Board of Land Commissioners (a sale of land by the board), it is apparent from the following quotation from the district court's ruling that testimony was received and findings were made by the district court for some purpose:

> Let the record show that in [the case before the court] the Court has been fully advised and the record discloses *the facts as elicited from this witness stand,* so there will be no definite findings of fact because they are in the record.

140 Colo. at 200, 343 P.2d at 835 (emphasis added). It was that general finding of fact

---

6. Colo. Const. art. IX, § 10, provides in pertinent part:

> It shall be the duty of the state board of land commissioners to provide for the location, protection, sale or other disposition of all the lands heretofore, or which may hereafter be granted to the state by the general government, under such regulations as may be prescribed by law; and in such manner as will secure the maximum possible amount therefor.

We need not resolve the constitutional issue in this opinion, nor need we address the question of the competency of the board to declare a statute void as unconstitutional. *See generally Industrial Commission v. Board of County Commissioners of the County of Adams,* 690 P.2d 839, 844 n. 6 (1984); *Clasby v. Klapper,* 636 P.2d 682, 684–85 (Colo.1981); *People ex rel. Commissioner of Agriculture v. Webster,* 40 Colo.App. 144, 146, 570 P.2d 560, 562 (1977).

7. Section 36–1–121(1), 15 C.R.S. (1973), provides:

> Any corporation, company, or person using or occupying any state or school lands without lease, and any corporation, company, or person who shall use or occupy state or school lands for more than thirty days after the cancellation or expiration of a lease, and any corporation, company, or person who constructs a reservoir, ditch, railroad, public

highway, telegraph or telephone line, or in any manner occupies or enters upon lands belonging to the state, without first having secured the authority and permission of the state board of land commissioners to so occupy the land for such purpose, shall be regarded as trespassers and, upon conviction thereof, shall be punished by a fine of no less than twenty-five dollars nor more than one hundred dollars, and each day shall be considered a separate offense.

8. The record indicates, however, that K.C.R. never sought permission from the board to enter the state land to attempt the discovery of coal. Thus, the possible application of section 36–1–121 to grant the board discretion to withhold land from discovery by withholding permission to enter such land, and the possible need for rules and regulations to guide that discretion, are not directly before this court. The district court's conclusion that the board had such discretion was not necessary to its ruling that the board properly denied K.C.R.'s application because of that company's failure to comply with section 36–1–140.

9. C.R.C.P. 52 provides, in pertinent part:

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon ....

which the appellant successfully assailed in *Mowry v. Jackson.*

■ In contrast, the present case is purely a judicial review of an administrative proceeding under section 24–4–106, C.R.S. (1982). Section 24–4–106(7) describes the role of a reviewing court:

In all cases under review, the court shall determine all questions of law and interpret the statutory and constitutional provisions involved and shall apply such interpretation to the facts duly found or established.

Thus, the district court had no fact finding role and received no evidence in this case. C.R.C.P. 52 has no applicability to such a proceeding.

### III.

■ It is undisputed that K.C.R. took no steps upon the state land leading to the alleged discovery of coal. K.C.R. did not seek the permission of the board to enter the land for the purpose of attempting the discovery of coal, and the only exploration hole was dug on adjacent, privately-owned land. Under these circumstances, K.C.R. was not entitled to a section 36–1–140 permit to investigate the extent of the alleged discovery.

K.C.R.'s reliance upon *Dallas v. Fitzsimmons,* 137 Colo. 196, 323 P.2d 274 (1958), as authority for its contention that a valid discovery was made is not persuasive. That case dealt in part with "the methods of determining proper discovery of radioactive materials …" in order to support the issuance of a lease on state lands under the predecessor to section 36–1–140. *Id.* at 203, 323 P.2d at 278. In *Dallas* there was evidence that uranium was found on each of four contiguous claims on state land by the use of a geiger counter. A discovery pit was then dug on one of the claims and an assay of samples from this pit showed the presence of uranium and vanadium. Given those facts, we stated:

Where as here the assay samples come from at least one of the claims, and all the claims are contiguous, and where the trial court could and did conclude from

the evidence that the non-assayed claims lie in similar ground, it is not unrealistic to hold that competent radiometric reactions supported by a chemical assay as to a part of the claims, clearly show the presence of uranium on the adjacent claimed locations, showing the same or similar radiometric readings. The latter are then valid "discoveries" under our statute as much so as are outcrops visible to the naked eye.

*Id.* at 204, 323 P.2d at 279.

We pointed out in *Dallas,* however, that to extend discoveries to adjacent claims, the discoveries "must be capable of competent radiometric delineation in similar rock in place or along the same vein or lode." *Id.* Thus, under the circumstances of that case we held that "the radiometric results coupled with the other evidence, such as the assay and type of rock in place show an overall fair compliance with the statute requiring discovery." *Id.* at 204–05, 323 P.2d at 279. Our holding in *Dallas* was based in part upon the fact that uranium "is not usually located like other minerals have been in the past …." *Smaller v. Leach,* 136 Colo. 297, 305, 316 P.2d 1030, 1036 (1957). We see no reason to extend the holding in *Dallas* beyond the location of radioactive minerals, which are not involved here.

Furthermore, in *Dallas* the prospecting was performed on state lands to which all persons had equal access and an equal opportunity to discover the minerals. The discoverer presumably was forced to establish several adjacent claims along the length of the state land discovery, rather than one claim, because the predecessor to section 36–1–140 only allowed for the location of mineral claims "not exceeding three hundred feet wide and fifteen hundred feet long each, or of three ten-acre subdivisions or mineral lots …." § 112–3–41, 5 C.R.S. (1953), amended by ch. 222, sec. 1, 1955 Colo.Sess.Laws, 684, 684. Here, in contrast, K.C.R. prospected on privately-owned land by agreement with the landowners and, therefore, had to extend the discovery to adjacent state land by inference in order to establish a claim in the first instance.

To allow a prospector such as K.C.R. to establish an entitlement to the preferential mineral leasing process of section 36–1–140 based upon a discovery made while prospecting on privately-owned lands would provide an unfair advantage to these adjacent landowners and their licensees.

We perceive no justification for extending the holding of *Dallas* to the facts of the present case. We decline on these facts to abandon the principle—explicit in the federal mining law [10] and implicit in section 36–1–140—that the discovery must be within the limits of the claim located. *See Michael v. Mills*, 22 Colo. 439, 443, 45 P. 429, 431 (1896).[11] We hold that the board properly denied issuance of an exploration permit to K.C.R.

The judgment is affirmed.

---

**10.** 30 U.S.C. § 23 (1982).

**11.** In *Michael v. Mills*, we stated that a contention that a discovery need not be made within the limits of the located claim "finds no support in the federal or state statutes." 22 Colo. at 443, 45 P. at 431. The state statutes cited in support were those statutes adopted by the General Assembly to supplement the federal mining laws, now codified as Art. 43 of Title 34, 14 C.R.S. (1984). *See also* 30 U.S.C. §§ 26, 28 (1982). The precursor to section 36–1–140 did not then exist to allow for the location of minerals on state land. It was not until 1905 that the legislature adopted a statute providing for the location of minerals on lands belonging to the state. *See* ch. 134, sec. 54, 1905 Colo.Sess.Laws 319, 342. Then, as now, this statute did not detail the method by which the prospector could make a mineral location on state lands, in contrast to the explicit requirements for locations on federal lands as set forth in the state statutes supplementing the federal mining laws. *See, e.g.,* § 2158, Compiled Statutes of Colorado (1883), now codified as amended as section 34–43–106, 14 C.R.S. (1984). It is not unreasonable to assume that the legislature intended, in 1905, that mineral locations on state lands be made in much the same manner as mineral locations on federal lands.