**BISHOP & CO., a Colorado corporation doing business as Village Real Estate & Rental Management, Inc., Plaintiff–Appellant,**

**v.**

**Bartholomew A. CUOMO, Andrew Cuomo and Vail Realty & Rental Management, Inc., a Colorado corporation, Defendants–Appellees.**

**No. 89CA1714.**

Colorado Court of Appeals,
Div. C.

Aug. 30, 1990.

Rehearing Denied Sept. 27, 1990.

Hochstadt, Straw & Strauss, P.C., Richard S. Strauss and Wendell B. Porterfield, Jr., Denver, for plaintiff-appellant.

Otto, Peterson & Post, Frederick S. Otto, Vail, for defendants-appellees.

Opinion by Judge DAVIDSON.

Plaintiff, Bishop & Co., appeals the trial court's denial of its motion for a preliminary injunction to restrain defendants from using an alleged trade secret belonging to Bishop. We affirm.

Defendants, Bartholomew A. Cuomo (Cuomo) and Andrew Cuomo, are licensed real estate brokers who were officers and shareholders of Bishop & Co., a real estate sales, rental, and management company. The Cuomos' contract with Bishop did not contain a covenant not to compete. After a period of time, defendants left Bishop and started their own real estate business.

The primary dispute in this case concerns Bishop's list of customers. From the limited record of the preliminary injunction hearing, it appears that a customer list was kept on a computer at Bishop. Cuomo, who was responsible for updating the information contained on the list, kept, with permission, a backup cassette tape of the list in his possession in case of computer malfunction. At the time he left Bishop's employ, Cuomo returned the tape. Although he had not copied or transcribed the tape, Cuomo knew, by memory, the names of the customers on the list.

Alleging unfair competition and misappropriation of trade secrets, Bishop filed suit seeking damages and injunctive relief under the Colorado Uniform Trade Secrets Act. By stipulation, the parties agreed on a temporary restraining order which enjoined defendants from soliciting business from Bishop's customers.

After an evidentiary hearing on Bishop's request for a preliminary injunction, the trial court, while expressing doubt as to defendants' possession thereof, enjoined defendants from using any physical list or tape, but denied Bishop's request that defendants be prevented from contacting persons whose names they remembered from their employment with Bishop. Without specificity, the trial court refused to enjoin contact between defendants and prior clients because, "among other things, damages would seem to be easily calculable." The trial court did not make a specific finding as to whether either the physical list or the information on the list constituted a trade secret or a misappropriation thereof.

## I.

Bishop first contends that the trial court's findings are insufficient. Insofar as Bishop is arguing that the trial court's oral recitation from the bench is too general to permit review, we do not agree. The trial court's comments indicate that the ground for its denial of the injunction was the availability of an action for damages and, thus, the absence of irreparable harm to Bishop if a preliminary injunction was not issued.

Although general in nature, the findings are sufficient to show the basis for the trial court's order. *See Mowry v. Jackson,* 140 Colo. 197, 343 P.2d 833 (1959).

## II.

█ Contending that the trial court erred in applying the "irreparable harm"

requirement of C.R.C.P. 65 to an injunction under the Trade Secrets Act, Bishop next argues that if there has been a misappropriation of a trade secret, a preliminary injunction is mandated. We disagree.

Pursuant to C.R.C.P. 65, in order to obtain a preliminary injunction, a party must show a reasonable probability of success on the merits, the lack of an adequate remedy of law, and irreparable harm from the refusal to grant the injunction. *Rustic Hills Shopping Plaza, Inc. v. Columbia Savings & Loan Ass'n,* 661 P.2d 254 (Colo.1983).

As adopted in Colorado, the Uniform Trade Secrets Act, § 7–74–103, C.R.S. (1986 Repl.Vol. 3A) provides:

> "Temporary and final injunctions including affirmative acts may be granted on such equitable terms as the court deems reasonable to prevent or restrain actual or threatened misappropriations of a trade secret."

Bishop argues that § 7–74–103, as contrasted with C.R.C.P. 65, only requires the trial court to determine whether there has been a misappropriation of a trade secret. Accordingly, Bishop asserts, C.R.C.P. 65 and § 7–74–103 are in conflict and the provisions of the rule should not be applied. We, however, perceive no conflict.

C.R.C.P. 1(a) provides that the rules of civil procedure "govern the procedure ... in all actions and proceedings of a civil nature ... with the exceptions stated in Rule 81." C.R.C.P. 81 excepts from coverage "any special statutory proceeding insofar as [the rules] are inconsistent or in conflict with the procedure and practice provided by the applicable statute."

Special statutory proceedings are discernible by their explicitly detailed procedures and, sometimes, by their non-adversarial nature. *See People v. District Court,* 192 Colo. 225, 557 P.2d 414 (1976). And, even in a special statutory proceeding, the rules of civil procedure are to be followed to the extent that they are not inconsistent or in conflict with the specially delineated procedure. *See Holman v. Holman,* 114 Colo. 437, 165 P.2d 1015 (1946).

The Uniform Trade Secrets Act neither sets forth explicitly detailed procedures nor suggests in any way that it is defining something other than an adversarial civil action. The section at issue here, § 7–74–103, simply provides that the trial court has the discretion to grant injunctions to "prevent or restrain actual or threatened misappropriation of a trade secret." This provision neither conflicts with C.R.C.P. 65 nor is sufficiently detailed to suggest that the General Assembly intended to displace the rule.

Nor does § 7–74–108, C.R.S. (1986 Repl. Vol. 3A), which provides that the Uniform Trade Secrets Act "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret," create such a conflict. This provision, by its very terms, does not refer to the rules of procedure, but rather to other provisions of substantive law, thus clarifying that the Act is intended to supplant the prior common law concerning civil liability for misappropriation. *See Boeing Co. v. Sierracin Corp.,* 108 Wash.2d 38, 738 P.2d 665 (1987).

In addition, the Act provides that it "shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this article among states enacting it." Section 7–74–109, C.R.S. (1986 Repl.Vol. 3A).

Although the wording of § 7–74–103 differs somewhat from that of the Uniform Act, nothing in either its text or legislative history suggests that a different thrust was intended. *See* Hearings on H.B. 1260 before the Senate Judiciary Committee, 55th General Assembly, Second Session (March 17, 1986); Hearings on H.B. 1260 before the House Judiciary Committee, 55th General Assembly, Second Session (February 11, 1986). Instead, we read the Colorado provisions as an abbreviation of those in the Uniform Act.

Both the comments to the Uniform Trade Secrets Act, 14 Uniform Laws Annot., Uniform Trade Secrets Act § 2 (comment) (1990 Supp.), and decisions by appellate courts that have considered the injunction provisions of the Act, *see, e.g., K–2 Ski Co. v. Head Ski Co.,* 506 F.2d 471 (9th Cir.

1974), have emphasized that the purpose of the injunction provisions of the act was to limit the duration of injunctions to a term that reasonably prevents actual or threatened misappropriation. *See generally* R. Klitzke, *The Uniform Trade Secrets Act*, 64 Marq.L.Rev. 277 at 301–304 (1980); Note, *Injunctions to Protect Trade Secrets—The Goodrich and DuPont Cases*, 51 Va.L.Rev. 917 (1965).

Bishop does not cite, nor have we found, a single case in which the Act was held to displace a state's procedural equivalent to our Rule 65. On the other hand, we have come across numerous decisions in which procedural provisions paralleling Rule 65 have been applied. *See American Electric v. Singarayar*, 530 So.2d 1319 (Miss.1988); *Loxtercamp Inc. v. Belgrade Cooperative Association*, 368 N.W.2d 299 (Minn.1985); *Electrical South, Inc. v. Lewis*, 96 N.C. App. 160, 385 S.E.2d 352 (1989); *A.B. Chance Co. v. Schmidt*, 719 S.W.2d 854 (Mo.App.1986).

A showing of irreparable harm, considered by some courts as "perhaps the single most important prerequisite for the issuance of a preliminary injunction," *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42 (2d Cir.1983); *see American Credit Indemnity Co. v. Sacks*, 262 Cal.Rptr. 92, 213 Cal.App.3d 622 (1989); *see also Community Communications Co. v. City of Boulder*, 660 F.2d 1370 (10th Cir.1981), *cert. dismissed*, 456 U.S. 1001, 102 S.Ct. 2287, 73 L.Ed.2d 1296 (1982), has been consistently required. *See Capital Tool & Manufacturing Co. v. Maschinenfabrick Herkules*, 837 F.2d 171 (4th Cir. 1988); *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244 (3rd Cir.1985); *FMC Corp. v. Taiwan Tainan Giant Industrial Co.*, 730 F.2d 61 (2d Cir.1984); *Kozuch v. Cra–Mar Video Center*, 478 N.E.2d 110 (Ind.App.1985); *Saliterman v. Finney*, 361 N.W.2d 175 (Minn.App.1985); *see generally*, R. Milgrim 12A *Business Organizations: Milgrim on Trade Secrets* §§ 7.05, 7.08 (1990).

Accordingly, we conclude that the trial court was correct in relying on the irreparable harm requirement of C.R.C.P. 65 to deny Bishop's motion for a preliminary injunction.

### III.

■ Bishop also asserts that it was prejudiced by not having been timely informed that opposing counsel was a member of the District Commission for the Fifth Judicial District. Our review of the record, however, indicates that this argument is without merit.

District commissions for the evaluation of the performance of judges were created in each judicial district pursuant to § 13–5.5–104, C.R.S. (1987 Repl.Vol. 6A). Information concerning the composition and function of the commission is public and readily available. Section 13–5.5–104(1)(a), C.R.S. (1987 Repl.Vol. 6A).

Before the hearing on the preliminary injunction, the trial court informed the parties of defense counsel's appointment to the commission. After consultation with his attorney, Bishop neither asked for a continuance nor moved for disqualification of either the court or counsel, but stated instead that he was willing to proceed.

Without addressing whether a request to recuse either the court or opposing counsel would have any merit, we conclude that, under these circumstances, Bishop waived any objection he might otherwise have had. *See Kerr v. Burns*, 42 Colo. 285, 93 P. 1120 (1908).

Judgment affirmed.

STERNBERG, C.J., and NEY, J., concur.