Alan GLOVER, personal representative of the Estate of Juel Richard Noren, a/k/a Juel R. Noren, deceased, Plaintiff–Appellee,

v.

Dain D. INNIS, Norma J. Innis, and Richard L. Innis, Defendants–Appellants.

No. 10CA0139.

Colorado Court of Appeals, Div. IV.

March 3, 2011.

Elder & Phillips, P.C., Keith Boughton, Grand Junction, Colorado, for Plaintiff–Appellee.

John Dudgeon, Wheat Ridge, Colorado, for Defendants–Appellants.

Opinion by Judge MILLER.

Defendants, Norma J. Innis, Richard L. Innis, and their son Dain D. Innis, appeal the trial court's summary judgment in favor of plaintiff, the personal representative of the Estate of Juel Richard Noren. We reverse and remand for further proceedings.

### I. Background

Defendants and Mr. Noren (decedent), with his wife who predeceased him, owned adjacent residential property in Mesa County. The Norens divided their time between Colorado and Carson City, Nevada. Defendants contend that they and the Norens became friends and that defendants looked after the Norens' property while they were in Nevada. Sometime after the death of Mrs. Noren, decedent and defendants engaged in discussions that resulted in defendants arranging for an attorney to draft a promissory note payable by defendants to decedent in the principal amount of $250,000, together with a related agreement (agreement) and warranty deed conveying decedent's Mesa County property (property). The draft agreement recited that decedent had sold his property to himself and Dain and Norma Innis as joint tenants by the warranty deed

in consideration for, among other things, the promissory note.

Defendants signed the note and agreement in November 2003 and sent them with the unsigned warranty deed to decedent in Nevada, but the parties did nothing further with the documents until one and one-half years later. At that time, decedent signed the agreement and warranty deed. He apparently retained the note, which defendants had previously sent him, because it was found among his effects at his Nevada home after he died.

The terms of the note required defendants to pay $250,000 in monthly installments commencing on January 1, 2007. Decedent died and this action was filed before any payments were due, and defendants never made any payments on the note. Defendants maintain that decedent never accepted the note, refused to accept and waived any payment under it, and repeatedly expressed his intent to give them the property.

Plaintiff filed this action, initially claiming, among other things, that defendants had obtained the property by fraud, undue influence, and civil theft, that the conveyance of the property to defendants was illusory, and that the entire transaction should be declared void and rescinded. Defendants pled several defenses, including waiver. Plaintiff moved for summary judgment on the illusory transaction theory. The trial court denied the motion, holding that the contract was not illusory because defendants promised to execute the note and deposit money in a bank account for maintenance of the property.

Plaintiff then moved for partial summary judgment on the note. Defendants opposed the motion, relying on their deposition testimony regarding conversations and dealings with decedent, as well as an affidavit of Harold Richardson, decedent's Carson City neighbor and co-guardian. The affidavit related statements made by decedent concerning his arrangements for the property and also stated that the affiant had seen a document signed by the Norens indicating that after their deaths the property would be given to defendants. The trial court declined to consider defendants' evidence, granted the motion, and entered judgment on the note with interest.

Shortly thereafter, the trial court conducted a bench trial on plaintiff's only remaining claims for breach of a provision in the agreement establishing the bank account and for an accounting. (Plaintiff withdrew all other unresolved claims.) The trial court found in defendants' favor and plaintiff has not appealed that order.

Defendants moved for post-trial relief, seeking to reduce the amount of prejudgment interest awarded under the promissory note. The trial court denied their motion.

## II. Analysis

We review a trial court's entry of summary judgment de novo. *Newflower Market, Inc. v. Cook,* 229 P.3d 1058, 1061 (Colo.App.2010). Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *G & A Land, LLC v. City of Brighton,* 233 P.3d 701, 703 (Colo.App.2010). The nonmoving party is entitled to the benefit of all favorable inferences that may reasonably be drawn from the facts, and all doubts must be resolved against the moving party. *Newflower Market,* 229 P.3d at 1061.

### A. Renunciation

Defendants contend that the trial court erred by characterizing their waiver defense as a renunciation defense under section 4–3–604, C.R.S.2010, and then rejecting it. We agree.

In order to resolve this issue, we must construe section 4–3–604 and related provisions of the Uniform Commercial Code, sections 4–1–101 through 4–9.7–109, C.R.S. 2010(UCC). We review matters of statutory interpretation de novo. *Richmond American Homes of Colo., Inc. v. Steel Floors, LLC,* 187 P.3d 1199, 1204 (Colo.App.2008). When interpreting a statute, we must effectuate the intent and purpose of the General Assembly. *Id.* When possible, we discern the intent of the General Assembly from the plain and ordinary meaning of the statutory language. *Id.* We avoid interpretations that

defeat the obvious legislative intent. *People v. Dist. Court,* 713 P.2d 918, 921 (Colo.1986). When possible, we interpret a statute to give consistent, harmonious, and sensible effect to all of its parts. *Id.* "Statutes must be construed to further the intent of the legislature as evidenced by an entire statutory scheme." *Bynum v. Kautzky,* 784 P.2d 735, 737 (Colo. 1989).

Here, defendants did not plead renunciation as a defense, but did plead waiver. The trial court, however, observed that "[w]hat Defendants call a waiver is more commonly called a renunciation." It then held that defendants had offered no evidence that decedent had renounced his rights under the note in the manner required by section 4–3–604, and the court accordingly granted plaintiff's motion for partial summary judgment.

■ Under section 4–3–604(a) an obligee may discharge the obligation of another person to pay an instrument by (1) an intentional voluntary act, such as surrender, cancellation, or destruction of an instrument, or (2) a signed writing renouncing his or her rights under the instrument. *See Ebrahimi v. E.F. Hutton & Co.,* 794 P.2d 1015, 1019 (Colo.App. 1989) (a renunciation of rights under a negotiable instrument must be in writing if the instrument itself is not surrendered); *Metro Nat'l Bank v. Roe,* 675 P.2d 331, 332 (Colo. App.1983). Because decedent was in possession of the uncancelled note upon his death and defendants produced no signed writing renouncing decedent's rights under the note, we agree with the trial court that decedent did not renounce his rights to collect under the note for purposes of section 4–3–604.

■ However, renunciation under section 4–3–604 is not the exclusive means of discharging an obligation under a note. *See* 2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 16–12, at 144 (5th ed. 2008) ("The events that discharge one's liability on a negotiable instrument are many."). Section 4–1–103(b), C.R.S.2010, provides that principles of law and equity supplement the UCC unless explicitly displaced by a particular UCC provision. More specifically, section 4–3–601(a), C.R.S.2010, makes clear that the obligation of a party to pay under an instrument can be discharged either as stated in the UCC or by any act or agreement that would discharge an obligation to pay under a simple contract. *See also Clovis Nat'l Bank v. Thomas,* 77 N.M. 554, 425 P.2d 726, 732 (1967) (citing New Mexico's UCC counterpart to section 1–1–103, the court held that because there is "no particular provision of the code which displaces the law of waiver, ... the code provisions are supplemented thereby"); *McGlothin v. Huffman,* 94 Ohio App.3d 240, 640 N.E.2d 598, 600 (1994) (the Ohio UCC renunciation provision is not the sole method by which an obligation under a promissory note can be discharged); *Burton v. Nat'l Bank of Commerce of Dallas,* 679 S.W.2d 115, 118 (Tex.App.1984) (the renunciation statute "is permissive rather than mandatory," and therefore is not the exclusive method by which a promissory note can be released); *see also* § 4–1–306, C.R.S.2010 (a claim arising out of an alleged breach may be discharged without consideration in an authenticated record); § 4–3–117, C.R.S. 2010 (providing for modification, supplementation, or nullification of obligation to pay an instrument by separate agreement).[1]

■ Furthermore, the renunciation statute applies only if the defendant asserts renunciation as a defense. *Ebrahimi,* 794 P.2d at 1019 (the statute does not apply when a party asserts that the right to receive interest under a promissory note was waived); *see also Adams v. White,* 173 Colo. 51, 54–55, 476 P.2d 36, 37–38 (1970) (construing comparable provisions in predecessor statute).

We are aware that another division of this court, in an opinion predating *Ebrahimi,* declined to consider testimony concerning an oral release from liability under a note, hold-

---

1. We note that other provisions of the UCC place explicit restrictions on waivers in other contexts. *See* § 4–9–602, C.R.S.2010 (providing that debtor or obligor in secured transaction may not waive certain rights); § 4–9–624, C.R.S.2010 (requiring that a debtor may waive certain rights re-garding collateral only by an agreement entered into and authenticated after default). The General Assembly chose not to place similar restrictions on an obligee's ability to waive payment on a note.

ing that under section 4–3–604 (which was then codified as 4–3–605), "renunciation of rights in a negotiable instrument must be either in writing or by the delivery or surrender of the instrument to the party to be discharged." *Metro Bank*, 675 P.2d at 332. The opinion, however, does not consider the effect of sections 4–1–103(b) and 4–3–601(a). Moreover, the opinion is silent on whether the defendant pled waiver as a defense. We therefore decline to follow the opinion in *Metro Bank.*

 Here, defendants pled the defense of waiver, not renunciation. Waiver arises when a party to a contract is entitled to assert a particular right, knows the right to exist, and intentionally abandons that right. *Roderick v. City of Colorado Springs*, 193 Colo. 104, 107, 563 P.2d 3, 5 (1977); *NationsBank v. Conifer Asset Management Ltd.*, 928 P.2d 760, 763 (Colo.App.1996); *Ebrahimi*, 794 P.2d at 1019. Waiver may be implied by a party's conduct. *Davis v. Brinkhouse Hotel Co.*, 74 Colo. 199, 200, 219 P. 1074, 1074 (1923) (waiver "may result from an express agreement, or it may be inferred from circumstances which indicate an intent to waive"); *NationsBank*, 928 P.2d at 763; *see also* § 4–3–601(a).

 The trial court accordingly erred by failing to consider defendants' waiver defense independent of renunciation. On remand, the trial court shall determine whether defendants established a genuine issue of material fact concerning whether decedent waived his right to payment under the note.

Defendants also contend on appeal that decedent never accepted the note and that there was no meeting of the minds sufficient to form a binding agreement. However, because defendants did not raise these issues in the trial court, we do not consider them. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 n. 5 (Colo.1992) ("Arguments never presented to, considered or ruled upon by a trial court may not be raised for the first time on appeal."); *Buckley Powder Co. v. State*, 70 P.3d 547, 556 (Colo.App.2002) (the court of appeals does "not normally consider arguments for reversal raised for the first time on appeal").

## B. Admissibility of Evidence

Because they are likely to arise on remand, we address two issues related to the admissibility of the evidence relied upon by defendants in opposing summary judgment.

A party opposing a motion for summary judgment must "set forth such facts as would be admissible in evidence." C.R.C.P. 56(e); *see also Hunter v. Mansell*, 240 P.3d 469, 474 (Colo.App.2010) ("The nonmoving party must show that there is a genuine issue of material fact with admissible evidence."); *In re Estate of Abbott*, 39 Colo.App. 536, 540, 571 P.2d 311, 314 (1977) ("[A] failure to state admissible facts in the affidavit ... may justify the court in entering summary judgment for the opposing party.").

The evidence at issue here consists primarily of defendants' deposition testimony and the Richardson affidavit.

### 1. Parol Evidence

 Plaintiff argues that the parol evidence rule bars admission of defendants' evidence and therefore that such evidence cannot be used to create a disputed issue of material fact. We disagree.

 The parol evidence rule is a principle of contract law, rather than a rule of evidence. *See* Restatement (Second) of Contracts § 213 cmt. a (1979). Where the rule applies, evidence of prior or contemporaneous agreements or negotiations may not be used to contradict a written instrument or to vary the terms of a written agreement. *See id.* § 215; *Neves v. Potter*, 769 P.2d 1047, 1054 (Colo.1989) (generally, an unambiguous document must be interpreted based only on information contained within its "four corners"); *McGuire v. Luckenbach*, 131 Colo. 333, 338–39, 281 P.2d 997, 999–1000 (1955); *Reisig v. Resolution Trust Corp.*, 806 P.2d 397, 400 (Colo.App.1991) ("If an instrument is clear in its terms, complete, and free from ambiguity, extrinsic evidence will not be permitted to modify it."); *see also* § 4–3–117 ("[s]ubject to applicable law regarding exclusion of proof of contemporaneous or previous agreements," an obligation to pay an instru-

ment may be modified, supplemented, or nullified by a separate agreement).

However, evidence tending to show a waiver is not offered to vary or contradict the terms of an agreement but rather to show that, after the making of an instrument, a party to it gave up a right under it. Thus, in *Ebrahimi*, the division upheld the admission of evidence of events occurring subsequent to the making of the note to prove a waiver of the interest called for in the note. 794 P.2d at 1019.

Here, defendants seek to introduce evidence arising after the making of the note, not to contradict or vary the terms of the note, but to prove that decedent waived his right to enforce its terms. The trial court may consider defendants' extrinsic evidence, if otherwise admissible, for that purpose.

### 2. Dead Man's Statute

■ Plaintiff argues that what is often called the Dead Man's statute, § 13–90–102, C.R.S.2010, prohibits admission of defendants' evidence. The trial court rejected this contention, holding:

> By its terms, this statute, unlike its predecessor, does not prohibit the admission of any evidence. It permits a party or person in interest to testify to oral statements made by a decedent under certain conditions. In effect, it creates another exception to the hearsay rule, C.R.E. 802.

We agree that the statute does not impose a blanket prohibition on all of defendants' evidence, but for a different reason.

■ Initially, we dispose of defendants' contention that plaintiff, as a personal representative, lacks standing to assert the statute's bar. As decedent's personal representative, plaintiff stands in decedent's shoes. *Espinoza v. O'Dell*, 633 P.2d 455, 466 (Colo. 1981) ("[t]he personal representative of the decedent's estate, by necessity, stands in the decedent's shoes" in prosecuting an action on behalf of the decedent). Under the former statute, the supreme court consistently recognized the standing of personal representatives who sued or were sued in their representative capacity. *See Oswald v. Dawn*, 143 Colo. 487, 494, 354 P.2d 505, 509 (1960) (for-

mer statute barred testimony by former partner of decedent in suit brought by administratrix to recover diverted partnership funds); *Risbry v. Swan*, 124 Colo. 567, 239 P.2d 600 (1951) (recognizing general rule but holding it did not apply where an administrator was named as a nominal defendant in a suit litigating conflicting claims among heirs); *Faden v. Estate of Midcap*, 112 Colo. 573, 578, 152 P.2d 682, 684 (1944) ("where one [party to a promissory note] is dead and is represented in the suit, then the living party shall not be permitted to testify"); *Cree v. Becker*, 49 Colo. 268, 112 P. 783 (1911) (plaintiff barred from testifying in suit on a bond against administrator of decedent's estate).

Plaintiff's reliance on *Estate of Abbott*, 39 Colo.App. at 539, 571 P.2d at 313, and two other decisions involving litigation among heirs and persons claiming to be heirs, is misplaced. The courts in those decisions did not extend standing to personal representatives who were not adverse to the party testifying. *See Risbry*, 124 Colo. at 575, 239 P.2d at 604 ("Only parties adverse may object."). Here, plaintiff is clearly adverse to defendants, against whom he seeks a substantial money judgment for the benefit of the estate of decedent.

In any event, the current statute applies "in any civil action by or against a person incapable of testifying." § 13–90–102(1). The statute defines "a person incapable of testifying" as including any decedent. § 13–90–102(3)(a). Since a decedent cannot sue or be sued except through a representative party, one would have to disregard the plain language of the statute to conclude that a personal representative may not assert its provisions against an opposing party.

We therefore conclude that plaintiff has standing to assert that the statute bars defendants' testimony.

In analyzing the statute, we apply the principles of statutory construction discussed above. Here, a bit of history also sheds important light. *See Bynum*, 784 P.2d at 737 (the history of a statute is useful in determining the intent of the legislature); *see also New York Trust Co. v. Eisner*, 256 U.S. 345, 349, 41 S.Ct. 506, 65 L.Ed. 963 (1921)

(Holmes, J.) ("a page of history is worth a volume of logic").

The common law, which Colorado retains as the rule of decision unless repealed by legislation, § 2–4–211, C.R.S.2010, excluded testimony by parties to a lawsuit and persons with a pecuniary or proprietary interest in the outcome as incompetent. Kenneth S. Broun, *McCormick on Evidence* 313 (6th ed. 2006). The harshness of this doctrine, which frequently precluded the most knowledgeable people from testifying, eventually resulted in sweeping reforms generally abolishing the rule during the nineteenth century. The most common surviving remnants of the common law rule are "dead man's" statutes, which typically disqualify a party or interested person from testifying concerning a transaction or communication with a person later deceased, in a suit in which the decedent's estate, executor, or personal representative is an opposing party. *Id.* at 314. These statutes addressed the concern that surviving parties might slant their testimony in their own favor if they were permitted to testify about a transaction or event, without fear of contradiction by the deceased. Herbert E. Tucker, *Colorado Dead Man's Statute: Time for Repeal or Reform?*, 29 Colo. Law. 45, 45 (Jan.2000) (*Tucker 2000*). More recently, many states have repealed their dead man's statutes or significantly liberalized them. *Id.* Many of these more recent statutes permit the admission of sufficiently corroborated statements of a decedent. *See* Herbert E. Tucker, Marc Darling & James W. Hill, *The New Colorado Dead Man's Statute*, 31 Colo. Law. 119, 119 (July 2002) (*Tucker 2002*).

Colorado has generally followed this legislative path. Section 13–90–101, C.R.S.2010, which was last amended in 1941, repeals, with certain exceptions, the common law exclusion of testimony by parties and interested persons:

> All persons, without exception, *other than those specified in sections 13–90–102 to 13–90–108* may be witnesses. Neither parties nor other persons who have an interest in the event of an action or proceeding shall be excluded....

(Emphasis added.) The first such exception, in the predecessor to current section 13–90–

102, was the Dead Man's statute. Ch. 178, sec. 19, § 13–90–102, 1994 Colo. Sess. Laws 1040. As recently as 2002, that section provided in part:

> No party to any civil action, suit, or proceeding or person directly interested in the event thereof shall be allowed to testify therein of such person's own motion or in such person's own behalf by virtue of section 13–90–101 when any adverse party sues or defends ... as the executor or administrator, heir, legatee, or devisee of any deceased person....

*Id.* Thus, the former statute prevented any party from testifying in a lawsuit brought by or against an executor or administrator as an adverse party, unless he or she could fit within one of nine statutory exceptions, permitting survivors to testify in specific circumstances. Critics asserted that the presence of these numerous exceptions made the statute difficult to interpret and apply and resulted in more than eighty reported decisions construing it. *See Tucker 2000* at 46.

In 2002, the General Assembly rewrote section 13–90–102 completely. As currently written, the section provides, in pertinent part,

> Subject to the law of evidence, in any civil action by or against a person incapable of testifying, each party and person in interest with a party shall be allowed to testify regarding an oral statement made by the person incapable of testifying if: ...
>
> (b) The statement is corroborated by material evidence of an independent and trustworthy nature.

§ 13–90–102(1)(b). The revised statute became effective on July 1, 2002. No reported appellate decisions have interpreted it.

We disagree with the trial court's conclusions that the revised statute merely creates an exception to the hearsay rule and does not prohibit the admission of any evidence. With respect to the first conclusion, the section begins with the words, "[s]ubject to the law of evidence," thus necessarily retaining the limitations on the use of hearsay set forth in CRE 801 through 807.

The conclusion that the statute does not prohibit the admission of any evidence does

not take into consideration that when the General Assembly rewrote section 13–90–102, it left section 13–90–101 untouched. As noted above, section 13–90–101 provides that all persons may be witnesses, except those specified in sections 13–90–102 through 13–90–108. Thus, although section 13–90–102 is phrased affirmatively, in order to give effect to the language in section 13–90–101, it should be read as specifying, albeit by negative implication, persons who may not be witnesses. The General Assembly, therefore, intended that, as pertinent here, parties may not testify regarding an oral statement made by an opposing deceased party unless one of the exceptions described in subsections (1)(a) through (c) is established.

Several points relevant to this case stand out under the revised statute:

- The statute bars testimony by defendants only with respect to *oral* statements by the decedent. It does not prevent the admission of written statements by the decedent, such as documents he may have signed or correspondence, subject to other rules of evidence governing the admissibility of written evidence.

- The statute does not preclude testimony from witnesses who are neither parties nor persons in interest with a party from testifying about the decedent's oral statements.

- The statute does not render witnesses incompetent to testify except as specifically delimited. Defendants, therefore, remain free to testify, subject to any other applicable evidentiary rules, concerning what they said, thought, did, observed, or intended.

- Section 13–90–102(1)(c) permits defendants to testify concerning an oral statement by decedent if "[t]he statement is corroborated by material evidence of an independent and trustworthy nature." The concepts of corroboration and trustworthiness are not new to Colorado evidence law. *See* CRE 803(7), 803(8), 804(b)(3), 807 (using one or both concepts as conditions to hearsay exceptions); *see also* § 13–25–129(1)(b)(II), C.R.S.2010 (requiring corroborative evidence where out-of-court statement of a child is used when the child is unavailable); *see also Tucker 2002* at 120.

The statute clearly applies here because decedent, of course, cannot testify and defendants are parties in interest. Because of its interpretation of the statute, the trial court did not determine whether any evidence, including statements in the Richardson affidavit, sufficiently corroborated defendants' testimony, or whether those statements themselves would be independently admissible. On remand, the trial court must exercise its discretion under the statute in accordance with this opinion.

### C. Interest

Defendants maintain that the trial court erred by failing to specify the manner in which it calculated the amount of interest owed to plaintiff. Because we remand the case for further proceedings on the note, we do not address this issue. However, should the court ultimately rule in plaintiff's favor, it should make sufficiently specific findings to permit appellate review of the components of its final award, including, but not limited to, interest and late fees. *See Mowry v. Jackson,* 140 Colo. 197, 201–02, 343 P.2d 833, 836 (1959) (the court's findings "must be so explicit as to give the appellate court a clear understanding of the basis of the trial court's decision and to enable it to determine the ground on which it reached its decision"); *In re Marriage of Naekel,* 181 P.3d 1177, 1179 (Colo.App.2008) ("[T]he court must make findings and conclusions that are sufficiently complete to allow appellate review.").

### D. Notice of Supplemental Citations

Finally, defendants filed a notice of supplemental citations to case law, purportedly pursuant to C.A.R. 28(j), several days before oral argument. The two-page document provides citations to four reported decisions of this court and one from the supreme court, all of which were issued between 1966 and 1992.

The cited rule provides:

If pertinent and significant *new* authority comes to a party's attention after the party's brief has been filed a party may promptly advise the court by notice, with a copy to all parties, setting forth the citation. The notice must state without argu-

ment the issue to which the supplemental citation pertains.

C.A.R. 28(j) (emphasis added). As the emphasized language indicates, the purpose of the rule is to provide counsel with an opportunity to bring to the attention of the court new authority, not available when briefs were submitted. It does not extend an open invitation to counsel to conduct additional research after the close of briefing and then present the fruits of such research to the court on the eve of argument. *See DeHerrera v. Am. Family Mut. Ins. Co.*, 219 P.3d 346, 353–54 (Colo.App.2009).

Here, the authorities cited vary in age between nineteen and forty-five years and fail to qualify under any definition of "new." The notice therefore does not comply with the rule. For future guidance, we caution counsel that any notice of supplemental authority filed in an appeal failing to comply with the dictates of C.A.R. 28(j) may result in sanctions, including payment of costs or striking of the notice.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge DAILEY and Judge NIETO * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2010.