The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 25, 2018

**2018COA7**

**No. 16CA198 In the Interest of Black — Probate — Persons Under Disability — Conservators — Fiduciary Duties — Conflicts of Interest**

In this conservatorship case, appellant Bernard Black, the former conservator of his mentally-ill sister, appeals the probate court's order finding that he breached his fiduciary duties and committed civil theft by converting his sister's assets for his own benefit.

Construing section 15-14-423, C.R.S. 2017, which allows a fiduciary to engage in a conflicted transaction under certain circumstances, a division of the court of appeals holds that this provision applies only when the fiduciary has disclosed the conflict of interest and demonstrated that the conflicted transaction is

nonetheless reasonable and fair to the protected person. Because Black did neither, he cannot seek safe harbor under the statute.

The division also holds that the probate court had jurisdiction to resolve the civil theft allegations and to impose civil theft damages, that Black had notice of the allegations against him and the remedies sought, and that the hearing was otherwise fair.

Accordingly, the division affirms the probate court's order.

COLORADO COURT OF APPEALS                                    **2018COA6**

Court of Appeals No. 16CA0198
City and County of Denver Probate Court No. 12PR1772
Honorable Elizabeth D. Leith, Judge

In the Interest of Joanne Black, Protected Person,

Appellee and Cross-Appellant,

v.

Bernard Black, in his Capacity as Trustee for the Supplemental Needs Trust for
the Benefit of Joanne Black,

Appellant and Cross-Appellee.

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE HARRIS
Furman and Berger, JJ., concur

Announced January 25, 2018

Holland Hart LLP, Christina Gomez, Matthew S. Skotak, Morgan M. Wiener,
Denver, Colorado, for Appellee

Davis Graham Stubbs LLP, Shannon Wells Stevenson, Paul D. Swanson,
Denver, Colorado, for Appellant

¶ 1 Bernard Black is the former conservator for his sister, Joanne Black. The probate court found that Mr. Black breached his fiduciary duty by converting Joanne's[1] assets for his own benefit. Based on its findings, the court surcharged Mr. Black in the amount of the converted funds and then trebled those damages under the civil theft statute.

¶ 2 Mr. Black's primary argument on appeal is that he could not have breached his fiduciary duty because the conflicted transaction that resulted in the conversion of his sister's assets was disclosed to, and approved by, the probate court. But we are not persuaded that Mr. Black complied with his obligations under section 15-14-423, C.R.S. 2017, the statute that he contends provides him safe harbor.

¶ 3 Nor are we persuaded that the court erred in finding Mr. Black liable for civil theft or that the evidentiary hearing was so unfair as to require reversal.

¶ 4 Accordingly, we affirm the probate court's order.

---

[1] For ease of reading, we refer to Ms. Black by her first name.

# I. Background

## A. Factual Background

¶ 5     The Black siblings' mother died in New York in 2012. Mr. Black believed that his children would inherit one-third of mother's entire estate. But his belief was mistaken.

¶ 6     Joanne suffers from chronic schizophrenia and cannot manage her own financial affairs. To account for Joanne's condition, mother created a special needs trust (the SNT) and, in her will, devised two-thirds of her estate to the SNT. The remaining one-third of the estate was devised to a trust for the benefit of Mr. Black and his children (the Issue Trust).

¶ 7     The bulk of mother's estate consisted of multiple accounts, including a Roth individual retirement account (Roth IRA), with a total value of approximately $3 million. Mr. Black expected that, upon mother's death, the $3 million would become part of the estate and be distributed to the SNT and the Issue Trust. But shortly before her death, mother designated the accounts as payable-on-death (POD) directly to Joanne. (More precisely, mother left 95% of the value of the accounts to Joanne and 1% to each of Mr. Black's five children from his first marriage. The Roth IRA was

2

left entirely to Joanne.) That left only the residual estate to be divided two-thirds to Joanne and one-third to Mr. Black and his children.

¶ 8 The discovery that he and his children had mostly been cut out of $3 million of mother's estate did not sit well with Mr. Black. Nor did it sit well with Mr. Black's second wife, with whom he had two children. Mr. Black's wife, along with his older children, threatened to mount a legal challenge to the validity of mother's POD designation.

¶ 9 As Mr. Black saw it, the situation presented only two options: his family could litigate the POD designation, or he could figure out another way to get what he considered to be his fair share of the money. But either way, as Mr. Black candidly admitted at the later evidentiary hearing, his goal was to "get the POD assets back into the estate."

¶ 10 Mr. Black, a tenured law professor who has written on the subject of corporate directors' fiduciary duties, decided that the best course of action was to seek appointment as Joanne's conservator.

Then, acting on Joanne's behalf, he could "disclaim"[2] the money in the POD accounts, and the money would revert to the estate and be distributed two-thirds to the SNT and one-third to the Issue Trust. In this way, Mr. Black later explained, he could unilaterally correct the "mistake" made in mother's designation of the POD accounts without enduring intra-family litigation.

## B. Procedural Background

¶ 11 Joanne had been a longtime resident of New York. But at the time of mother's death, Joanne was in Denver, homeless and in a deteriorated state. Thus, Mr. Black initiated the conservatorship action in the probate court in Denver. In his petition, he told the court that Joanne's approximately $3 million in assets were at risk of being "wasted or dissipated" because mother had "inadvertently"

---

[2] To "disclaim" means to refuse to accept an interest in property. § 15-11-1202(3), C.R.S. 2017. A fiduciary may disclaim an interest in property on behalf of another. § 15-11-1205(2), C.R.S. 2017. Generally, if an interest in property is disclaimed, "the disclaimed interest passes as if the disclaimant had died immediately before the time of distribution," § 15-11-1206(2)(c)(II), C.R.S. 2017, unless the instrument creating the interest provides otherwise, § 15-11-1206(2)(b). The parties appear to agree that once Mr. Black disclaimed Joanne's interest in the POD accounts, those accounts became property of mother's estate, to be distributed pursuant to the terms of her will.

4

designated the accounts as POD to Joanne, rather than routing the funds through the SNT. In support of his petition, Mr. Black emphasized that the "assets need to be secured."

¶ 12 After a hearing on the petition in December 2012, during which Mr. Black first proposed the disclaimer as a method for securing the assets, the probate court appointed Mr. Black as Joanne's conservator. The order of appointment authorized the conservator to disclaim Joanne's interests in the POD accounts and further provided that "[Joanne's] assets will be placed into a Supplemental Needs Trust for [Joanne's] benefit."

¶ 13 Mr. Black promptly executed the disclaimer. Pursuant to his plan, the POD assets (with the exception of the Roth IRA) were then redistributed two-thirds to the SNT and one-third to the Issue Trust. As for the $300,000 Roth IRA, Mr. Black simply moved those funds into new accounts in the name of his children.

¶ 14 Questions about the propriety of the disclaimer were first raised two years later. By that time, Joanne had returned to New York and parallel guardianship proceedings had been initiated in that state. During the course of those proceedings, and in response

to Joanne's inquiries, Mr. Black admitted that he had diverted approximately $1 million of the POD assets to the Issue Trust.

¶ 15    Joanne's court-appointed counsel filed a motion to void the disclaimer. Counsel argued that Mr. Black's diversion of one-third of the POD assets was "antithetical to the terms and intent of [mother]. All of this money was meant for [Joanne's] care and benefit." Counsel alleged that, in failing to "preserve and maintain [Joanne's] assets for her sole benefit," Mr. Black had breached his fiduciary duty as Joanne's conservator.

¶ 16    At a subsequent status conference, the court approved a request for an independent accounting of Joanne's assets and scheduled an evidentiary hearing to resolve the issue of whether Mr. Black had properly disclosed his intent to redirect one-third of Joanne's POD assets to Mr. Black's children and whether the disclaimer gave Mr. Black the authority to do so. The court advised the parties that it would consider whether "disgorgement or unwinding of fiduciary actions" was appropriate.

¶ 17    Shortly before the first day of the evidentiary hearing, Joanne's guardian ad litem (GAL) filed a motion alleging that Mr. Black's

conduct amounted to civil theft and requesting that the court award treble damages.

¶ 18    The evidentiary hearing occurred over the course of four days, from June to September 2015.  Following the hearing, the court issued a written "hearing order" finding that Mr. Black had breached his fiduciary duty to Joanne.  Specifically, the court concluded that Mr. Black had failed to adequately disclose his intent to use the disclaimer to divest his sister of one-third of the POD assets and, therefore, he did not have the court's authorization to redirect the assets.  Mr. Black's actions in redirecting the funds were "deceptive and undertaken in bad faith," the court determined, and his conduct satisfied the elements of civil theft.  Accordingly, the court "surcharged" — or, ordered reimbursement by — Mr. Black in the amount of $1.5 million, the value of the improperly diverted assets, including the Roth IRA.  Then, under the civil theft statute, it trebled the damages.

## II.  Jurisdictional Issues

¶ 19    We begin by addressing Mr. Black's jurisdictional challenges to the court's hearing order.  First, he contends that the probate court lacked jurisdiction to enter the hearing order because any

challenge to the disclaimer had to be brought under C.R.C.P. 60, the procedural mechanism for attacking a final judgment. And second, he says that he did not receive sufficient notice that the evidentiary hearing was a "surcharge proceeding."

¶ 20 When resolution of a jurisdictional issue involves a factual dispute, we apply a clearly erroneous standard of review. *Tulips Investments, LLC v. State ex rel. Suthers*, 2015 CO 1, ¶ 11. But when there are no disputed facts, the determination of a court's subject matter jurisdiction presents a question of law we review de novo. *Id.*

## A. The Motion to Void the Disclaimer

¶ 21 Mr. Black argues that only a Rule 60(b) motion — not a motion to void the disclaimer — could undo the court's order authorizing the disclaimer.

¶ 22 True, a final judgment may be vacated only as provided for in C.R.C.P. 60. *In re Marriage of Scheuerman*, 42 Colo. App. 206, 208, 591 P.2d 1044, 1046 (1979). But the motion to void the disclaimer did not seek relief from a final order. Instead, the motion alleged that Mr. Black had breached his fiduciary duties to Joanne while acting as conservator, and it sought to unwind a transaction based

on this breach. *Levine v. Katz*, 167 P.3d 141, 144 (Colo. App. 2006) ("[I]t is the facts alleged and the relief requested that decide the substance of a claim, which in turn is determinative of the existence of subject matter jurisdiction.") (citation omitted).

¶ 23    Thus, the probate court's jurisdiction to conduct a hearing regarding a possible breach of Mr. Black's fiduciary duties and to enter the hearing order (which, we note, did not unwind the transaction) was based not on Rule 60 but on the court's authority to monitor fiduciaries over whom it has obtained jurisdiction. *See* § 15-10-501, C.R.S. 2017. Pursuant to section 15-10-503, C.R.S. 2017, the probate court has authority, either by petition or on its own motion, to address alleged misconduct of a fiduciary. Accordingly, the court had jurisdiction to adjudicate the allegations and issues raised by the motion to void the disclaimer.

B.  Notice of Surcharge Proceeding

¶ 24    Mr. Black further contends that the court lacked subject matter jurisdiction because he did not receive sufficient notice of the surcharge proceeding.

¶ 25    Section 15-10-504, C.R.S. 2017, sets forth remedies, including imposition of a surcharge, against a fiduciary who has breached his fiduciary duties:

> (2) Surcharge.  (a) If a court, after a hearing, determines that a breach of fiduciary duty has occurred or an exercise of power by a fiduciary has been improper, the court may surcharge the fiduciary for any damage or loss to the estate, beneficiaries, or interested persons. Such damages may include compensatory damages, interest, and attorney fees and costs.

*See also* § 15-10-503(2)(g) (listing remedies available for fiduciary's breach of his duties, including "[a] surcharge or sanction of the fiduciary pursuant to section 15-10-504").  Under section 15-10-401, C.R.S. 2017, the fiduciary must receive notice by mail of the time and place of the surcharge proceeding fourteen days before the hearing.

¶ 26    We are not convinced that the notice was statutorily deficient. The court bifurcated the proceedings into a liability phase and a damages phase.  On August 6, after the conclusion of the liability phase, the court issued a minute order, explaining that the next hearing, set for September 8, would address the issues of surcharge

and civil theft. Thus, Mr. Black had more than fourteen days' notice of the damages portion of the hearing.

¶ 27    But even if we assume that notice of the hearing did not strictly comply with section 15-10-401, we disagree that any defect divested the court of jurisdiction. Mr. Black had actual notice of the proceedings, and the possible consequences, more than fourteen days before the evidentiary hearing. "[I]n the absence of explicit statutory language requiring it, a statute requiring the providing of notice by a specified means need not be strictly applied." *Feldewerth v. Joint Sch. Dist. 28-J*, 3 P.3d 467, 471 (Colo. App. 1999). Nothing in section 15-10-401 indicates that the form of notice is a jurisdictional requirement; thus, "actual notice may be substituted for it." *Id.*

¶ 28    The GAL filed her motion to void the disclaimer on February 9, 2015, approximately four months before the first day of the evidentiary hearing. The motion alleged that Mr. Black had breached his fiduciary duties by converting more than $1 million of Joanne's assets for his own benefit. The GAL sought an order voiding the disclaimer and the return of the converted assets to the court registry.

11

¶ 29    The court held a status conference on April 2, 2015.  In response to a suggestion that the disclaimer could not be unwound, the court reminded Mr. Black that "disgorgement" was a possible remedy: "And does Mr. Black understand that under this process he can be required to disgorge money?"

¶ 30    Following the status conference, the court issued a status conference order, explaining that Mr. Black was "the subject of allegations of misconduct" and suspending him as conservator pending an evidentiary hearing to resolve the allegations.  The court's order advised the parties that the evidentiary hearing would address "whether the allegations of breach of fiduciary duty are supported by the evidence and whether any disgorgement or unwinding of fiduciary actions, including the creation of trusts, is appropriate."

¶ 31    We conclude that the notice of the allegations of breach of fiduciary duty, and warnings that "disgorgement" was a possible remedy, gave Mr. Black actual notice that he might be ordered to reimburse Joanne for any funds improperly diverted out of the conservatorship estate.

¶ 32    In any case, by the time of the hearing, the parties and the court specifically used the term "surcharge" instead of "disgorgement" to describe the possible remedy for a breach of fiduciary duty.  In her prehearing brief, Joanne's counsel asked the court to "surcharge the fiduciary" under section 15-10-504(2)(a).[3] Mr. Black did not object to proceeding with the evidentiary hearing. Then, on the second day of the hearing, the court noted that "this is a surcharge action."  Again, Mr. Black did not object on the ground that he was unaware of the nature of the proceedings.  In fact, on the third day of the hearing, Mr. Black's counsel objected to certain cross-examination as irrelevant because "it has nothing to do with the issue[s]," one of which he defined as "whether or not a surcharge ought to be imposed."  Later during the hearing, Mr. Black's counsel suggested to the court that a surcharge "would be the only remedy available" for any breach of fiduciary duty.

¶ 33    Indeed, Mr. Black does not dispute that he had actual notice of the surcharge proceedings.  His argument is that any failure to

_____

[3] To the extent Mr. Black argues that no party sought surcharge damages, Joanne's prehearing brief refutes that claim.  Moreover, surcharge damages can by imposed on the court's own motion. § 15-10-503(2)(g), C.R.S. 2017.

strictly comply with the statutory notice requirement constituted a due process violation that deprived the court of jurisdiction to impose sanctions. But we must reject that argument in light of Mr. Black's actual notice, coupled with his failure to object to a purported lack of notice and his participation in the surcharge proceedings. *See Feldewerth*, 3 P.3d at 471; *see also City of Philadelphia v. Urban Mkt. Dev., Inc.*, 48 A.3d 520, 522 (Pa. Commw. Ct. 2012) (no due process claim based on lack of notice where party had actual notice and participated in hearing).

### III. Breach of Fiduciary Duty

¶ 34     We turn now to Mr. Black's primary argument on appeal: that he could not have breached his fiduciary duty to Joanne because his conversion of one-third of her POD assets was disclosed to, and approved by, the probate court, in accordance with section 15-14-423.

¶ 35     We review de novo the legal questions concerning the fiduciary duty's nature and scope, but whether a fiduciary duty has been breached is a factual question we review for clear error. *Mintz v. Accident & Injury Med. Specialists, PC*, 284 P.3d 62, 68 (Colo. App.

14

2010), *aff'd*, 2012 CO 50.  We review questions of statutory

interpretation de novo.  *Taylor v. Taylor*, 2016 COA 100, ¶ 26.

### A.  A Fiduciary Has a Duty of Loyalty That Generally Precludes Conflicted Transactions

¶ 36  A conservator is a fiduciary and must "observe the standards

of care applicable to a trustee."  § 15-14-418(1), C.R.S. 2017.  Thus,

as Joanne's conservator, Mr. Black owed her a "duty of undivided

loyalty."  *Estate of Keenan v. Colo. State Bank & Tr.*, 252 P.3d 539,

543 (Colo. App. 2011) (citation omitted).  Indeed, the "duty of loyalty

is, for trustees, particularly strict even by comparison to the

standards of other fiduciary relationships."  Restatement (Third) of

Trusts § 78 cmt. a (Am. Law Inst. 2007) (hereinafter Restatement).

¶ 37  Consistent with the duty of loyalty, a conservator must

manage the protected person's assets for her sole benefit, without

regard to the interests of others.  *Jones v. Estate of Lambourn*, 159

Colo. 246, 250, 411 P.2d 11, 13 (1966); *see also* § 15-1.1-105,

C.R.S. 2017 ("A trustee shall invest and manage the trust assets

solely in the interests of the beneficiaries."); *Hilliard v. McCrory*, 110

Colo. 369, 371, 134 P.2d 1057, 1058 (1943) ("[I]t is the duty of a

conservator to conserve . . . the property and safeguard the interest of its owner . . . .").

¶ 38     To that end, the duty of loyalty strictly prohibits a conservator from entering into transactions involving the protected person's property if the transaction is for the conservator's personal benefit or otherwise involves or creates a conflict between the fiduciary duties and personal interests of the conservator.  *See* Restatement § 78; *see also In re Estate of Heyn*, 47 P.3d 724, 726 (Colo. App. 2002) (trustee's use of trust property creates presumption that trustee has breached his fiduciary duties).

### B.  A Fiduciary May Engage in a Conflicted Transaction if He Gives Notice of the Conflict and Shows That the Transaction is Nonetheless Reasonable and Fair

¶ 39     Still, a conservator may obtain approval to engage in a conflicted transaction if he (1) complies with section 15-14-423's notice requirement and (2) establishes that the conflicted transaction is nonetheless reasonable and fair to the protected person.

### 1.  The Notice Requirement Under Section 15-14-423

¶ 40     Section 15-14-423 provides that "[a]ny transaction involving the conservatorship estate that is affected by a substantial conflict

between the conservator's fiduciary and personal interests is voidable unless the transaction is expressly authorized by the court after notice to interested persons." The provision explains that a "transaction affected by a substantial conflict between personal and fiduciary interests includes any sale, encumbrance, or other transaction involving the conservatorship estate entered into by the conservator . . . ." *Id.*

¶ 41    Mr. Black acknowledges that the act of disclaiming Joanne's assets created a conflict between his fiduciary duties to Joanne and his own personal interests. But he insists that he did not breach his fiduciary duties by engaging in the conflicted transaction because he satisfied the notice requirement under section 15-14-423 and the court expressly authorized the transaction.

a. The Statute Requires Objectively Reasonable Notice, Not Actual Notice, of the Conflicted Transaction

¶ 42    As an initial matter, we agree with Mr. Black that whether he complied with his notice obligations under the statute turns on the nature of his disclosures and not the court's subjective understanding of those disclosures. In other words, to determine Mr. Black's compliance with the statute, we look at his actions and

17

evaluate whether his disclosures were sufficient to meet the purpose of the statute. We do not attempt to divine the effect of the disclosures on a particular judge to determine whether the court received actual notice. *See, e.g., Weaver v. Colo. Dep't of Soc. Servs.*, 791 P.2d 1230, 1233 (Colo. App. 1990) (Adequacy of notice must be tested on an objective basis; "its validity . . . is dependent upon its adequacy in providing the necessary information to a reasonable person.").

¶ 43    But we disagree with Mr. Black that the court improperly applied an actual notice standard in finding that he failed to adequately disclose all of the relevant information related to the disclaimer transaction. The court reviewed all of the pleadings and other documents, as well as Mr. Black's statements, and determined that the information provided was inadequate because "at no time did [Mr. Black] explain his true intentions with regard to the funds held in the [POD accounts]."

¶ 44    In our view, the court assessed compliance with the statutory requirements based on an objective reasonableness standard. As the court explained at the hearing, "none of th[e] documentary evidence" amounted to a full disclosure: there was no "explicit

18

explanation of [the disclaimer] in any way, shape, or form." The notice of a conflicted transaction was not "in any of th[e] exhibits," or in the "transcript of the December hearing" to appoint the conservator, or in any of the "written form of the orders" that the court signed. The court looked at Mr. Black's actions — not at its subjective understanding of those actions — and found that he had "failed to plainly and fully disclose his intentions and the intended result of the disclaimer" and that, as an objective matter, his disclosures were "woefully inadequate."

¶ 45 To the extent the probate court *also* noted that it did not have actual notice of the conflicted nature of the disclaimer transaction, we discern no error.

¶ 46 At the evidentiary hearing, Mr. Black attempted to establish that he had sufficiently disclosed the nature of the disclaimer transaction by filing various documents that referenced Joanne's entitlement to two-thirds of mother's residual estate. But his efforts were undermined by his own conservatorship counsel's repeated concessions that these references did not provide unequivocal notice of Mr. Black's intent to divert one-third of the POD assets into the Issue Trust. For example, counsel agreed that certain of

the documents were "ambigu[ous]" and that, in retrospect, he understood that Mr. Black should have made an "actual" and "express" disclosure "in a document filed with the court." Even Mr. Black's litigation counsel acknowledged that Mr. Black's disclosure of the transaction did not qualify as "full" disclosure and conceded that "if we could do it over — and by 'we,' I mean me, [conservatorship counsel], and [Mr. Black] — we would do it differently."

¶ 47 So, Mr. Black presented an alternative argument: that, notwithstanding any deficiencies in the disclosures, all of the interested parties, at least, had actual notice of his interest in the transaction. According to Mr. Black, he and his lawyer had numerous, but undocumented, discussions with Joanne's lawyer, the GAL, and Joanne's cousin, who was participating in the proceedings as her advocate. Not only that, Mr. Black maintained, but the parties had access to various documents, and approved a proposed order submitted by Mr. Black, that put them on notice of the consequences of the disclaimer. As Mr. Black's litigation counsel argued, "I think it's pretty solid that [Joanne's lawyer and the GAL] had actual knowledge because we – the record is also very

20

clear that they had this will in their possession and they knew what the will did."

¶ 48  In its hearing order, the probate court not only rejected Mr. Black's argument that he had provided objectively reasonable notice of the transaction, but also rejected his argument that the disclosures, even if objectively deficient, had provided the court with actual knowledge of the conflicted nature of the disclaimer. Rejection of the latter argument necessarily required the court to explain that it did not share Mr. Black's subjective understanding of the proffered documents.  We perceive no error in the court's decision to address an argument expressly advanced by Mr. Black.

### b.  To Satisfy the Notice Requirement, the Fiduciary Must Disclose the Conflict

¶ 49  Section 15-14-423, which is entitled "[s]ale, encumbrance, or other transaction involving conflict of interest," provides an exception to the strict prohibition against a fiduciary's participation in transactions involving a conflict of interest.  The purpose of the notice requirement is to allow the court (and all interested parties) to evaluate the nature of the conflict to determine whether, *despite the conflict,* the transaction is permissible.  At a minimum, then, the

21

fiduciary must disclose *the conflict.* A fiduciary may not seek safe harbor under a provision that allows him to engage in a conflicted transaction upon the approval of the court if he does not disclose to the court that he is engaging in a conflicted transaction. This seems so obvious to us as to be almost syllogistic.

¶ 50 And yet, by his own admission, at every stage of the proceeding, Mr. Black failed to disclose his substantial conflict of interest.

¶ 51 From its inception, the integrity of the conservatorship was undermined by Mr. Black's undisclosed conflict. Mr. Black admitted that he sought the appointment as conservator for the purpose of disclaiming Joanne's interest in the POD assets so that they could be redistributed in accordance with his and his children's expectations of his mother's estate plan. He agreed that the "interests of [his] children were in tension with the interest of Joanne Black," and that this "tension" amounted to a conflict of interest. But he did not tell the probate court that he was laboring under this conflict of interest when he filed his petition to be appointed as Joanne's conservator. "[A] person with a conflict of interest cannot serve as conservator of the estate." *Fitzmaurice v.*

22

*Vandevort*, ___ So. 3d ___, ___, 2017 WL 3426214, at *6 (Miss. Ct. App. 2017) (citation omitted). If a conflict exists, "the fiduciary has a duty to refuse the trust, resign, or remove the conflicting personal interest." *Id.* (citation omitted).

¶ 52    Nor did Mr. Black disclose the existence of a conflict of interest at the time he requested authorization to disclaim Joanne's assets, even though he knew that "taking one-third of [Joanne's] assets for the benefit of [him] and [his] children was a conflict." At the evidentiary hearing, Mr. Black admitted that he never told the probate court that "he faced a conflict" as conservator in seeking to disclaim Joanne's assets.

### c.  Even if Section 15-14-423 Requires Only Disclosure of the Material Facts Concerning the Conflict, Mr. Black Failed to Satisfy this Requirement

¶ 53    In the probate court, Mr. Black insisted that he "provided the facts underlying the conflict," and that the conflict was so "obvious" that the underlying facts sufficed. On appeal, he reasserts the argument that disclosure of certain facts satisfied his statutory obligation to provide notice of the conflicted transaction.

¶ 54    We decline to deviate from our determination that the statute requires disclosure of the nature of the conflict itself. But even if

23

disclosure of certain facts could substitute for disclosure of the conflict, Mr. Black failed in this regard as well.

¶ 55 As a preliminary matter, we reject out of hand Mr. Black's argument that he had to disclose the facts only to "interested parties" (the GAL, court-appointed counsel, and Joanne's family members), "not the court." The statute requires that the proposed conflicted transaction be "expressly authorized by the court." Mr. Black does not explain how the court could authorize the conflicted transaction without notice of the conflict or even of the underlying facts.

¶ 56 As for the adequacy of the disclosed information, the probate court found that Mr. Black failed to disclose the intended effect of the disclaimer — in other words, that the disclaimer involved a conflict of interest. That finding is supported by the record.

¶ 57 In his petitions, Mr. Black assured the court that he intended to "secure" the "$3 million in [POD] assets" until "such time as the Court can determine the proper protection for the assets." He did not reveal his plan to disclaim the assets (or the anticipated loss to Joanne of more than $1 million), though he acknowledged at the

24

evidentiary hearing that he sought the conservatorship for the very purpose of disclaiming the assets.

¶ 58 At the December 11 hearing on the petition, when the disclaimer was first raised, Mr. Black told the court that he was going to "get [the] money from my mother into a trust; my cousin will then be the trustee so she'll have financial support." He did not mention that he intended to place only two-thirds of the assets into a trust for Joanne and to distribute the remainder to himself and his children.

¶ 59 In its order appointing Mr. Black as conservator, the court directed that Joanne's "assets will be placed into a Supplemental Needs Trust" for her benefit. The order authorized Mr. Black to disclaim the POD assets, but did not authorize any diversion of those assets into a trust for the benefit of another person.

¶ 60 Indeed, as we have noted, even Mr. Black's conservatorship counsel conceded that, in hindsight, the disclosures were ambiguous. And Mr. Black admitted that the information was disclosed only "in effect" and "implicit[ly]."

¶ 61 Moreover, after Mr. Black was appointed conservator, he further obfuscated the effect of the disclaimer by filing an original

inventory form that showed the value of the conservatorship assets *after* Mr. Black had redirected one-third of the assets into the Issue Trust, rather than their value as of the date of his appointment.

¶ 62 On appeal, however, Mr. Black says that the conflicted nature of the disclaimer transaction was disclosed to the court in the following documents: (1) a court visitor's report and a doctor's letter, both submitted in October 2012; (2) two proposed orders submitted in November 2012 and January 2013, respectively; and (3) mother's will and trust documents, submitted to the court and parties in advance of the conservatorship hearing.

¶ 63 The probate court was not convinced that these documents provided notice of the import of the disclaimer, and we cannot say that the court is clearly wrong.

¶ 64 Both the court visitor report and the doctor's letter recounted statements from Mr. Black on the general distribution of mother's estate: two-thirds to Joanne and one-third to Mr. Black. Neither document mentioned a planned disclaimer (Mr. Black would not propose the disclaimer to the court for another six weeks) or that, under the disclaimer transaction, some of Joanne's POD assets would be diverted to the Issue Trust.

¶ 65    The proposed orders did not provide any additional information.  In fact, the proposed orders did not mention a two-thirds/one-third distribution at all.  The proposed orders provided only that, once the POD assets were disclaimed, they would revert to the estate and two-thirds would be distributed to the SNT pursuant to mother's will.  But the same proposed orders stated that the POD assets would "flow into the Estate of [mother] and then into the Supplemental Needs Trust for Respondent's benefit" and, even more unequivocally, that "Respondent's assets will be placed into a Supplemental Needs Trust for Respondent's benefit."

¶ 66    As for the will and trust documents, they would have provided confirmation of the two-thirds/one-third split of assets from the estate, but would not have explained that a portion of the nonprobate POD assets were to be redirected to Mr. Black, despite language in the petitions and proposed orders to the contrary.

¶ 67    Mr. Black contends that the court had a duty to synthesize all of the disparate disclosures and infer from the information that Mr. Black intended to redirect one-third of Joanne's assets for his own benefit.  But as the Seventh Circuit has famously admonished, "[j]udges are not like pigs, hunting for truffles buried in" the parties'

27

submissions. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). No document or statement submitted during the course of the proceedings mentioned that Joanne's disclaimed POD assets would be redistributed, in part, to a trust of which Mr. Black and his children were beneficiaries.

¶ 68    The fiduciary has "an affirmative duty to disclose material information" about a conflicted transaction. Restatement § 78 cmt. c(1). We conclude that the record fully supports the probate court's finding that Mr. Black failed to satisfy this duty.

### 2. The Requirement That a Conflicted Transaction be Reasonable and Fair to the Protected Person

¶ 69    Disclosure of the conflicted transaction is not enough to immunize a conservator from a breach of fiduciary duty claim. In addition, the fiduciary has an obligation, independent of section 15-14-423, to establish that the conflicted transaction is fair and reasonable and not adverse to the interests of the protected person. *See In re Estate of Foiles*, 2014 COA 104, ¶ 46; *see also Day v. Stascavage*, 251 P.3d 1225, 1230 (Colo. App. 2010) (self-dealing transaction must be undertaken in good faith, be fair to the party, and be accompanied by full disclosure); Restatement § 78 cmt. c(1)

28

("The court will permit a [conflicted] transaction . . . only if it determines that it is in the interest of the beneficiaries to do so.").

¶ 70    Mr. Black's conservatorship lawyer acknowledged that the disclaimer "harmed" Joanne because "instead of $3 million for her lifetime, she now only has two," and "$3 million . . . is clearly better than $2 million."  To be sure, Mr. Black testified that he believed the disclaimer benefitted Joanne.  But the court was not obliged to accept his self-serving testimony, particularly because Mr. Black admitted that he did not consider any alternative to disclaiming and then redistributing Joanne's assets for his own benefit.  He did not, for example, seek any advice concerning options for protecting Joanne's interest in the POD assets.  Nor did he consider, once the assets were diverted into the Issue Trust, transferring Joanne's share of the assets back into the SNT.

¶ 71    In sum, Mr. Black failed to disclose the conflicted transaction to the court and also failed to establish that the transaction, though conflicted, was nonetheless reasonable and fair to Joanne.  Accordingly, the probate court did not err in finding that Mr. Black breached his fiduciary duties.  *See Wright v. Wright*, 182 Colo. 425, 428, 514 P.2d 73, 75 (1973) (trustee breached fiduciary duty by

29

using funds meant for the benefit of the beneficiaries for personal use); *In re Estate of McCart*, 847 P.2d 184, 186 (Colo. App. 1992) (trustee breached his fiduciary duties by acting with improper motive and clear conflict of interest in seeking to conserve the trust funds for himself and his heirs); *see also Marshall v. Grauberger*, 796 P.2d 34, 37 (Colo. App. 1990) (court may properly consider the fiduciary's motive in determining whether he breached his duties).

## IV. Civil Theft

¶ 72    Next, Mr. Black contends that the probate court erred in finding him liable for civil theft. He insists that the probate court lacked jurisdiction over the claim; that the claim was time barred; and that, in any event, the evidence was insufficient to establish the elements of civil theft.

## A. Jurisdiction

¶ 73    Mr. Black says that the probate court lacked jurisdiction to resolve a civil theft claim and that a lack of notice also deprived the court of jurisdiction.

### 1. Jurisdiction to Decide the Civil Theft Claim

¶ 74    "A court is said to have jurisdiction of the subject matter of an action if the case is one of the type of cases that the court has been

empowered to entertain by the sovereign from which the court derives its authority." *Paine, Webber, Jackson, & Curtis, Inc. v. Adams*, 718 P.2d 508, 513 (Colo. 1986) (citation omitted).

¶ 75 We review the issue of jurisdiction de novo. *In re Estate of Murphy*, 195 P.3d 1147, 1150 (Colo. App. 2008). In determining whether a particular court has jurisdiction, we consider the nature of the party's claim and the relief sought. *Id.*

¶ 76 The Denver Probate Court has jurisdiction "in all matters of probate . . . [and] appointment of guardians, conservators and administrators, and settlement of their accounts . . . ." Colo. Const. art. VI, § 9. More specifically, the probate court may "determine every legal and equitable question arising in connection with decedents', wards', and absentees' estates, so far as the question concerns any person who is before the court . . . by reason of any asserted obligation to the estate." § 13-9-103(3), C.R.S. 2017.

¶ 77 Under section 13-9-103(3), the phrase "in connection with" has been construed broadly as a grant of authority to resolve disputes "logically relating" to the estate. *In re Estate of Owens*, 2017 COA 53, ¶ 13 (quoting *Estate of Murphy*, 195 P.3d at 1151).

¶ 78    The civil theft claim is coterminous with the breach of fiduciary duty claim, and is thus directly related to Mr. Black's "obligation[s] to [Joanne's] estate." § 13-9-103(3). As a conservator, Mr. Black had an obligation to preserve Joanne's assets, and any claim that he failed to do so arises "in connection with" her estate and concerns someone "who is before the court . . . by reason of an[] asserted obligation to [that] estate." *Id.*; *Estate of Murphy*, 195 P.3d at 1151. Accordingly, we conclude that the probate court had jurisdiction to consider the civil theft claim.

¶ 79    We are not persuaded otherwise by Mr. Black's argument that jurisdiction is lacking because the civil theft statute is found in the criminal code. The civil theft statute does not set forth a criminal violation; it establishes a private civil remedy for theft. *See Itin v. Ungar*, 17 P.3d 129, 133 (Colo. 2000). Thus, pursuant to section 13-9-103, a civil theft claim is cognizable by the probate court when the claim is logically related to the estate.

¶ 80    In his reply brief, Mr. Black also argues that the probate court lacks jurisdiction to order punitive relief while sitting in equity. Because this contention was raised for the first time in the reply, we

32

decline to address it. *DeHerrera v. Am. Family Mut. Ins. Co.*, 219 P.3d 346, 352 (Colo. App. 2009).

## 2. Notice of the Claim

¶ 81    Mr. Black also says that the court lacked jurisdiction to resolve the civil theft claim because he had no "advance notice" of the claim, as it was not raised in a complaint but instead was asserted in a motion.

¶ 82    First, Mr. Black did have notice of the civil theft claim. The motion was filed on June 15, the day before the evidentiary hearing began, but the court conducted a bifurcated proceeding and it informed the parties in advance (by order dated August 6) that it would not consider the civil theft claim until September 8.

¶ 83    Second, though not styled as a complaint, the motion set forth the allegations against Mr. Black and explained how the allegations satisfied the elements of a civil theft claim.

¶ 84    Third, whatever defects Mr. Black perceives in the timing or form of the allegations, he waived any claim on appeal by failing to object in the probate court. "Despite any defect in the pleadings, an issue is deemed properly before the court where it has been tried before the court without timely objection or motion." *CB Richard*

33

*Ellis, Inc. v. CLGP, LLC*, 251 P.3d 523, 528-29 (Colo. App. 2010); *see also* C.R.C.P. 15(b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.").

¶ 85     At no time — not after the motion was filed nor after the court issued the August 6 minute order — did Mr. Black complain that he had insufficient notice of the request for civil theft damages or that the form of the allegations was somehow deficient.  To the contrary, Mr. Black filed a motion to dismiss the civil theft claim under C.R.C.P. 12(c), and challenged the claim as time barred and the allegations as insufficient to establish a statutory violation, but he said nothing about the adequacy of the notice or the form of the allegations.

¶ 86     He now maintains that he had "no opportunity" to conduct discovery on the claim or to demand a jury, but he did not ask to conduct discovery, nor did he request a jury.  Instead, he proceeded to participate in the evidentiary hearing.  Therefore, the civil theft issue was properly before the probate court.  *See Great Am. Ins. Co. v. Ferndale Dev. Co.*, 185 Colo. 252, 255, 523 P.2d 979, 980 (1974) (although answer was never formally amended to include

affirmative defense, issue was properly before the court where opposing counsel never objected to the issue being tried).

### B. Timeliness of the Civil Theft Claim

¶ 87    In the alternative, Mr. Black contends that the civil theft claim is time barred.  A claim for civil theft must be brought within two years after "the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." §§ 13-80-102(1)(a), 13-80-108(1), C.R.S. 2017.  The date a claim accrues is a question of fact that we review for clear error.  *Williams v. Crop Prod. Servs., Inc.*, 2015 COA 64, ¶ 4.

¶ 88    Mr. Black says that the claim accrued in March 2013, when the court issued its order authorizing the disclaimer.  At that point, his argument goes, he had sufficiently disclosed the nature of the disclaimer transaction, and the court and all interested parties were on notice of his intent to convert Joanne's assets for his own benefit.  But we have already rejected that argument for purposes of the breach of fiduciary duty analysis, and so we reject it for present purposes as well.

¶ 89    Instead, we affirm the probate court's finding, which is amply supported by the record, that the claim accrued in September 2014, when Mr. Black filed an amended annual report.

¶ 90    Mr. Black's original inventory did not accurately represent Joanne's assets on the date of his appointment or reveal the transfer of assets to Mr. Black. Instead, the inventory simply listed Joanne's assets (minus the Roth IRA, which was omitted entirely) as of the end of March 2013, after Mr. Black had diverted $1 million into the Issue Trust. Thus, as Mr. Black's conservatorship counsel recognized, the inventory might have given the false impression that all of Joanne's POD assets were disclosed, but that the assets had lost value over time. It was not until September 2014, when Mr. Black filed an amended accounting that showed some irregularities in his management of the conservatorship estate, that the parties had any reason to suspect misconduct. Therefore, the probate court did not err in determining that the civil theft claim accrued in September 2014 and was timely asserted in June 2015.

## C. Sufficiency of the Evidence of Theft

¶ 91    On the merits, Mr. Black contends that there was insufficient evidence in the record to support the court's finding that he committed civil theft.

¶ 92    When sufficiency of the evidence is challenged on appeal, we must determine whether the evidence, viewed as a whole and in the light most favorable to the prevailing party, is sufficient to support the ruling. *Parr v. Triple L & J Corp.*, 107 P.3d 1104, 1106 (Colo. App. 2004). Where, as here, the party challenges the court's factual findings, we review those findings for clear error. *Fid. Nat'l Title Co. v. First Am. Title Ins. Co.*, 2013 COA 80, ¶ 13. Because the credibility of the witnesses and the sufficiency, probative effect, and weight of all the evidence, as well as the inferences and conclusions to be drawn therefrom, are all within the province of the trial court, we will not disturb the court's findings of fact unless they are so clearly erroneous as to find no support in the record. *Id.*

¶ 93    To recover civil theft damages, a party must prove, by a preponderance of the evidence, that the defendant committed all of the elements of criminal theft. *Itin,* 17 P.3d at 134. A person commits theft when he "knowingly obtains, retains, or exercises

37

control over anything of value of another without authorization or by threat or deception" with the intent to deprive the other person permanently of the thing of value. § 18-4-401(1), C.R.S. 2017. "[T]heft by deception requires proof that misrepresentations caused the victim to part with something of value and that the victim relied upon the swindler's misrepresentations." *People v. Roberts*, 179 P.3d 129, 132 (Colo. App. 2007) (quoting *People v. Warner*, 801 P.2d 1187, 1189-90 (Colo. 1990)), *aff'd*, 203 P.3d 513 (Colo. 2009), *superseded by statute on other grounds*, Ch. 244, sec. 2, § 18-4-401(4), 2009 Colo. Sess. Laws 1099-1100.

¶ 94    Mr. Black does not dispute that there was sufficient evidence that he obtained control over Joanne's assets with the intent to permanently deprive her of them. He disputes only the probate court's finding of deception.

¶ 95    A finding of deception requires proof that the defendant made misrepresentations to the victim.[4] In this context, a

---

[4] In this case, the misrepresentations made to the probate court are sufficient. *See People v. Devine*, 74 P.3d 440, 444 (Colo. App. 2003) (deception made upon the probate court in an effort to commit theft from a victim's estate satisfies the requirements of section 18-4-401(1), C.R.S. 2017). To the extent this creates any appearance of

38

"misrepresentation is a false representation of a past or present fact or a promise to perform a future act made with the present intention not to perform the promise or future act." *People v. Lewis*, 710 P.2d 1110, 1116-17 (Colo. App. 1985). This includes statements that are misleading or "convey a false understanding . . . by concealment of information." *People v. Harte*, 131 P.3d 1180, 1185 (Colo. App. 2005); *see also People v. Campbell*, 58 P.3d 1148, 1161 (Colo. App. 2002) (failure to disclose material information could support element of theft by deception).

¶ 96    The record supports the probate court's finding that Mr. Black made misrepresentations or misleading statements or that he concealed material facts:

> • In his petitions to the probate court, Mr. Black averred that Joanne was "entitled to approximately $3 million," and he pledged to place the POD assets in trust for her benefit. In reality, though, Mr. Black sought appointment as

---

impropriety with the probate court acting as the fact finder, Mr. Black did not raise this issue in the probate court or on appeal. Because he could have moved to disqualify the judge, but did not, he cannot now complain about any appearance of impropriety caused by the judge adjudicating the civil theft claim. *See Bishop & Co. v. Cuomo*, 799 P.2d 444, 447 (Colo. App. 1990).

conservator precisely because he believed that Joanne was *not* entitled to $3 million, but only to a two-thirds share of those assets, and he intended from the start to divert one-third for his own benefit, despite his duty of loyalty to Joanne.

- Mr. Black appropriated the entire value of the Roth IRA. Just after he exercised the disclaimer, he moved those funds into multiple accounts in the names of his children. He did not disclose the conversion of the Roth IRA funds to anyone, including his lawyer. At the hearing, he testified that he was advised to divest Joanne of the Roth IRA funds "for tax reasons," but he could not identify the source of that advice.

- Mr. Black testified that he offset the value of the Roth IRA funds against his share of estate funds, but the independent accounting expert's report contradicted that testimony.

- Mr. Black was required to submit an original inventory of Joanne's assets as of the date of his appointment in December 2012. He determined, apparently with input from his lawyer, that it would be more "sensible" to file an original inventory that showed Joanne's assets as of March 31,

2013, *after* he had exercised the disclaimer. Thus, the inventory did not disclose that $1 million of the POD assets had been redirected into the Issue Trust. Mr. Black's lawyer acknowledged that the inventory might have conveyed the false impression that all of the POD assets had been distributed to the SNT but had depreciated in value between December 2012 and March 2013.

- Mr. Black did not disclose the Roth IRA funds on the inventory.

- At trial, Mr. Black testified that "all the money is accounted for. There have been no improprieties, no misdeeds, no misspending of money." He insisted that the allegations were a "complete concoction." In fact, Mr. Black's own accounting expert concluded that Mr. Black had failed to distribute even two-thirds of the assets to Joanne, leaving a "shortfall" owed by Mr. Black. According to the independent accounting expert, the estate no longer had sufficient assets to cover the shortfall. (Mr. Black admitted to paying his personal income taxes, his children's private school tuition, and his older children's student loan bills from the estate.)

41

¶ 97    Mr. Black also contends that there was insufficient evidence of reliance and that the court failed to make findings of fact on this element.  When a conservator allegedly commits theft from a protected person by deception on the probate court, reliance is established if the probate court relied on the misrepresentations in authorizing the theft.  *People v. Devine*, 74 P.3d 440, 444 (Colo. App. 2003).

¶ 98    Here, the court made clear that it relied on Mr. Black's misrepresentations in authorizing the disclaimer, and that it would not have authorized the transaction had it known the true facts. Any documentary evidence contradicting Mr. Black's misrepresentations does not negate the court's reliance.  *See People v. Carlson*, 72 P.3d 411, 416 (Colo. App. 2003) (victim's testimony that he relied on defendant's misrepresentation was sufficient to prove reliance, despite the fact that victim reviewed documents that purported to conflict with the misrepresentation).

¶ 99    We are not persuaded by Mr. Black's contention that his purported reliance on counsel negates any finding of deception.

¶ 100   For one thing, his lawyer testified that Mr. Black did not disclose his conversion of the Roth IRA funds.  Thus, contrary to

42

Mr. Black's assertion, he did not "provid[e] full information to counsel."

¶ 101   Moreover, the court was not required to credit Mr. Black's testimony that he acted strictly in accordance with the advice of counsel.  Mr. Black acknowledged that he, not his lawyer, devised the plan to seek appointment as Joanne's conservator for the purpose of redistributing the POD assets.  The probate court did not have to accept Mr. Black's assurances that once he became conservator, his conduct was dictated entirely by his lawyer.  The probate court's rejection of Mr. Black's testimony turns on credibility determinations that are binding on us, and we may not substitute our judgment for that of the probate court.  *People v. Poe*, 2012 COA 166, ¶ 14.

¶ 102   Accordingly, we conclude the evidence was sufficient to sustain a finding that Mr. Black committed civil theft.

## V.  The Fairness of the Hearing

¶ 103   Mr. Black contends that the probate court committed a series of errors that rendered the evidentiary hearing so unfair that reversal is required.

### A.  Denial of Continuances

43

¶ 104    Mr. Black insists that the court abused its discretion when it denied two requests for continuances of the evidentiary hearing.

¶ 105    In his first request for a continuance, Mr. Black's litigation counsel argued that he needed additional time to conduct discovery, including "likely" taking depositions. The court denied the request, noting that the New York proceedings had created some urgency to resolve the breach of fiduciary duty allegations. But, to accommodate Mr. Black's potential deposition schedule, it substantially shortened the interested parties' time to respond to written discovery.

¶ 106    In his second request for a continuance, submitted a week before the surcharge and civil theft hearing in September 2015, Mr. Black's litigation counsel told the court that his mother had recently died and that he had suffered a knee injury, circumstances that affected his ability to prepare for the hearing. The court expressed sympathy but denied the request, citing the ongoing proceedings in New York and the difficulty in scheduling the September hearing.

¶ 107    The decision to grant or deny a continuance lies within the sound discretion of the trial court and will not be set aside on

appeal absent a clear abuse of discretion. *Butler v. Farner*, 704 P.2d 853, 858 (Colo. 1985). In determining whether to grant a continuance, the court should consider the circumstances of the particular case, weighing the right of the party requesting the continuance to a fair hearing against the prejudice that may result from delay. *Id.* Even if the court abuses its discretion, however, reversal is not warranted unless a party demonstrates actual prejudice. *People v. Chambers*, 900 P.2d 1249, 1253 (Colo. App. 1994).

¶ 108 We discern no abuse of discretion in the court's denial of the requests for continuances, but even if we did, Mr. Black has failed to allege, much less demonstrate, any prejudice, except in the most cursory terms.

¶ 109 He says the denial of the first request was prejudicial because it prevented him from deposing the cousin. But he does not explain why he could not have deposed the cousin in the time allotted. Nor does he explain how the failure to depose the cousin rendered his cross-examination less effective. Moreover, counsel did not object to the cousin's testimony on the ground that he had not had an opportunity to depose the witness. Thus, the court's denial of the

45

first request does not constitute reversible error. *See, e.g., id.* (no showing of prejudice resulting from denial of continuance on grounds of late endorsement of witness where the defendant cross-examined the witness and did not articulate how further investigation would have helped); *People v. Kraemer*, 795 P.2d 1371, 1376 (Colo. App. 1990) (no showing of prejudice from late endorsement of witness where defendant failed to establish that his preparation or performance would have been different had he known the content of the witness's testimony earlier).

¶ 110    As for the denial of the second request, Mr. Black says only that he was "deprived of [his] senior, experienced counsel." In fact, Mr. Black's litigation counsel attended the hearing, along with co-counsel who had participated in the prior proceedings. Mr. Black's litigation counsel told the court that he had assisted co-counsel in preparing for the hearing. Thus, in the absence of some particularized showing of prejudice, we discern no reversible error from the court's denial of the second request for a continuance. *See Farner*, 704 P.2d at 859 (no prejudice from denial of request for continuance due to unavailability of principal counsel when alternative counsel was available).

## B. Expert Witness

¶ 111    We also reject Mr. Black's contention that the court erred in excluding his proffered expert witness.  We review a trial court's decision to exclude expert testimony for an abuse of discretion and will not overturn the court's ruling unless it is "manifestly erroneous."  *People v. Williams*, 790 P.2d 796, 797-98 (Colo. 1990).

¶ 112    Pursuant to CRE 702, expert testimony is admissible if it will "assist the trier of fact to understand the evidence or to determine a fact in issue."  "When the trial court is sitting as the fact finder, it need not admit expert testimony on an issue that it is capable of resolving itself."  *Sniezek v. Colo. Dep't of Revenue*, 113 P.3d 1280, 1284 (Colo. App. 2005).  The probate court determined that the expert testimony would not have been helpful, and we will not second-guess the court's determination.

¶ 113    Counsel explained that the expert would opine that Mr. Black's disclosures were sufficient to put the interested parties on notice of the effect of the disclaimer — in other words, according to counsel, the expert would "tell [the court] the law."  To the extent the expert intended to testify about the correct legal standard, his testimony was inadmissible.  *See, e.g., People v. Pahl*, 169 P.3d 169,

47

182 (Colo. App. 2006) ("[A]n expert may not usurp the function of the court by expressing an opinion on the applicable law or legal standards.").

¶ 114    To the extent the expert intended to opine that the visitor's report, the doctor's letter, the proposed orders, and the will and trust documents disclosed the conflicted nature of the disclaimer transaction, the court could properly have concluded that it was in a better position than the expert to make that determination.  As the court noted, resolution of the case depended on "the facts and the actions of what the people said and what they did and what they testified that they intended."  The court acted well within its discretion in determining that the expert's testimony would not be helpful.  *See Sniezek*, 113 P.3d at 1284; *see also Huntoon v. TCI Cablevision of Colo., Inc.*, 969 P.2d 681, 689 (Colo. 1998) (in considering admissibility of expert testimony, court must first determine whether the proffered expert testimony will be helpful to the trier of fact).

C.  The Court's Comments During the Hearing

¶ 115    Mr. Black also contends that the court "improperly testified about key facts and witness credibility."  He points to two instances

of supposed improper conduct by the court: First, he recounts an exchange between litigation counsel and the court in which the court explained that, based on its own memory of the circumstances surrounding Mr. Black's disclosures, it "absolutely did not have any understanding that a third of these assets was going to go to somebody else." Second, he notes that, at one point in the hearing, the court stated that, based on its observations of Joanne's court-appointed counsel and the GAL, it was "satisfied" that neither of those interested parties had actual knowledge of Mr. Black's plan to convert his sister's assets for his benefit.

¶ 116    In addressing the first instance of alleged misconduct, we think some context is helpful. On the third day of the evidentiary hearing, Mr. Black's litigation counsel raised a question about the scope of the hearing. But that discussion quickly morphed into an argument by counsel on the merits of Mr. Black's position. Throughout counsel's extended argument, the court asked questions and made comments. Several minutes into the argument, after counsel had described all of the evidence purportedly proving that the GAL and Joanne's court-appointed

49

counsel had actual knowledge that the disclaimer would divest

Joanne of one-third of her money, the following exchange occurred:

> THE COURT: Well, [court-appointed counsel and the GAL] have already testified that that's not their understanding of the way this was going to work.
>
> MR. BLACK'S COUNSEL: Well, I – I agree that that's what they testified to . . . .
>
> We're now talking two and a half years later when apparently – I don't know why they're testifying the way they are, but I think it's pretty solid that they had actual knowledge because we – the record is also very clear that they had this will in their possession and they knew what the will did.
>
> THE COURT: I mean, you know, part of the problem okay is I have my own independent memory of all this.
>
> MR. BLACK'S COUNSEL: And I guess – I'm dying to ask you, what is it?
>
> THE COURT: And I have to tell you it's really in accord with what everyone else is saying. I absolutely did not have any understanding that a third of these assets were going to go to somebody else.
>
> MR. BLACK'S COUNSEL: Uh-huh.
>
> THE COURT: It was my understanding that the disclaimer would go, the money would go into the estate and then all go back out into her trust.

> MR. BLACK'S COUNSEL: And then 100 percent would go to –
>
> THE COURT: Right.
>
> MR. BLACK'S COUNSEL: And I appreciate your candidly sharing that with me, Your Honor.

¶ 117    As an initial matter, we are hard pressed to characterize the court's comments as error when they were essentially invited by Mr. Black's counsel. *Cf. Hansen v. State Farm Mut. Auto. Ins. Co.*, 957 P.2d 1380, 1385 (Colo. 1998) (Under the invited error doctrine, "a party may not later complain where he or she has been the instrument for injecting error in the case.").

¶ 118    And, contrary to his assertion on appeal, Mr. Black never objected to any of the court's comments during counsel's extended argument.[5]  He complains that the court's spontaneous "testimony"

---

[5] Mr. Black says that his counsel told the court that he was "disturbed" by the court's comments; in fact, what he told the court was, "what I'm disturbed about is their [court-appointed counsel and the GAL] refusal to concede at any point that they might have known [about the effect of the disclaimer]" because "I just cannot accept that they didn't know that's what was going to happen."  And he "cho[se] his words carefully" not because he was about to object to the court's comments and he thought the objection might offend

51

deprived him of a right to cross-examine a witness, but he never sought a remedy. Mr. Black could have moved to disqualify the judge or requested that she recuse herself, which would have allowed him the opportunity to call her as a witness. Because Mr. Black never sought to disqualify the judge, he waived any claim that he was denied his right to cross-examine her. *See Estate of Binford v. Gibson*, 839 P.2d 508, 511 (Colo. App. 1992) (declining to consider untimely motion to recuse), *abrogated on other grounds by Scott v. Scott*, 136 P.3d 892 (Colo. 2006); *Bishop & Co. v. Cuomo*, 799 P.2d 444, 447 (Colo. App. 1990).

¶ 119 But perhaps more to the point, we reiterate that, in the probate court, Mr. Black argued vigorously that all of the interested parties had actual knowledge of, and had signed off on, Mr. Black's plan to take money from his sister. For example, during his extended argument, Mr. Black's counsel directed the court to a proposed order submitted by Mr. Black. When the court pointed out that it had not signed the order, counsel explained that he was offering the proposed order to show that "[court-appointed counsel]

the court, but because he was about to accuse Joanne's lawyer of knowingly allowing Mr. Black to convert Joanne's assets.

52

and [the GAL] had actual knowledge of what the disclaimer was going to do." He also told the court about telephone conversations between Mr. Black's conservatorship counsel and the other interested parties, during which all parties supposedly reached "an agreement" that Mr. Black would take one-third of the assets by way of the disclaimer.

¶ 120  Thus, as we have explained, the court's comments at the hearing and in its written hearing order were a direct response to Mr. Black's actual notice argument. The court was not testifying as a witness; it was properly commenting on counsel's position that the court, as well as the interested parties, had understood (notwithstanding the less-than-full disclosure) that Mr. Black intended to reroute a portion of Joanne's assets into the Issue Trust. Under these circumstances, we cannot say that the court's comments were improper.

¶ 121  We now address the second instance of alleged misconduct, in which, according to Mr. Black, the court improperly commented on the credibility of two witnesses. In response to counsel's allegation that Joanne's lawyer and the GAL had both agreed to Mr. Black's plan, the court stated, "[court-appointed counsel] and [the GAL]

don't get exercised about much and they're pretty exercised about this. So I'm satisfied that they really didn't know [about the effect of the disclaimer] and neither did I."

¶ 122    We note, as a preliminary matter, that the court may consider demeanor in assessing credibility. *People v. Constant*, 645 P.2d 843, 846 (Colo. 1982). But again, as Mr. Black acknowledges in his briefing, the court's comment went to whether the interested parties had actual knowledge of the conflicted nature of the disclaimer transaction, an argument raised by Mr. Black.

¶ 123    In sum, these two comments by the court did not render the four-day evidentiary hearing so unfair as to require reversal.

## VI.  The 2013 Trust

¶ 124    Finally, Mr. Black contends that the probate court erred in concluding that he was not authorized to create a separate trust (the 2013 Trust), into which he deposited Joanne's workers' compensation benefits and her Social Security disability insurance benefits. We discern no error.

¶ 125    Pursuant to section 15-14-411(1)(d), C.R.S. 2017, a conservator must obtain "express authorization" from the court before creating a trust of property of the estate. In considering

whether to approve this request, the court must consider whether the trust is in the best interest of the protected person, along with numerous other factors. § 15-14-411(3).

¶ 126 Mr. Black insists that "express authorization" was obtained in the conservatorship order because he requested, and was granted, authority to "place [workers' compensation] benefits in trust for Respondent (Joanne Black Trust II)." However, no information (including documents related to the 2013 Trust) was submitted to the court that would have allowed it to make the necessary determination, required under section 15-14-411(3), of whether the 2013 Trust was in Joanne's best interest. And without this prior determination, the court could not have expressly authorized the 2013 Trust. Accordingly, we conclude that the probate court did not err in determining that the 2013 Trust was not expressly authorized.

## VII. Cross Appeal

¶ 127 Joanne cross-appeals, contending that the probate court erred by failing to make explicit findings denying her request to void the disclaimer. We discern no error.

¶ 128   Under section 15-10-503, when a fiduciary has breached his duties, the probate court has significant discretion to impose a variety of remedies to protect the protected person or the assets of the estate.  The statute empowers the probate court to order "[s]uch further relief as the court deems appropriate."  § 15-10-503(2)(i).

¶ 129   The determination of the proper remedy is within the sound discretion of the trial court.  We discern no abuse of discretion in the court's decision to impose a surcharge rather than to order that the disclaimer transaction be unwound.  *See Virdanco, Inc. v. MTS Int'l*, 820 P.2d 352, 354 (Colo. App. 1991) (in breach of fiduciary duty action, court did not err in electing a different remedy than one initially requested by the plaintiff).

## VIII.  Appellate Attorney Fees

¶ 130   Joanne seeks appellate attorney fees pursuant to section 18-4-405, C.R.S. 2017, which requires an award of fees upon a finding of civil theft.  We agree that she is entitled to fees under this provision.  Pursuant to C.A.R. 39.1, we exercise our discretion and remand to the probate court for a determination of reasonable appellate attorney fees.

## IX. Conclusion

¶ 131    The order is affirmed, and the case is remanded to the probate court for a determination of reasonable appellate attorney fees.

JUDGE FURMAN and JUDGE BERGER concur.